# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| J. P. SZYMKOWICZ<br>1543 44th Street, N.W.<br>Washington, DC  20007-2004,<br><br>Plaintiff,<br><br>vs.<br><br>DIRECTV, INC.<br>2230 East Imperial Highway<br>El Segundo, California  90245,<br><br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NUMBER: |

## NOTICE OF REMOVAL OF ACTION
## UNDER 28 U.S.C §§ 1441, 1332(d), and 1453

PLEASE TAKE NOTICE that Defendant DIRECTV, Inc. ("DIRECTV") hereby

removes to this Court the District of Columbia Superior Court action described below.

1.  On January 29, 2007, Plaintiff J.P. Szymkowicz ("Plaintiff"), and his father and law

partner John T. Szymkowicz (as the putative class counsel), commenced this action against

DIRECTV in the Superior Court for the District of Columbia, Civil Division, as Civil Action

Number 2007 CA 000690 B entitled "J.P. Szymkowicz, Representative Plaintiff vs. DIRECTV,

Inc., Defendant."  DIRECTV first received a copy of the Complaint on March 7, 2007, when a

copy of the Complaint and Summons were served on DIRECTV.  A copy of all process,

pleadings, and orders served upon the Defendant is attached as Exhibit A.

2.  Plaintiff purports to represent a nationwide class of DIRECTV customers who

activated a DIRECTV Plus High-Definition Digital Video Recorder receiver (HD-DVR) and

subscribed to DIRECTV's DVR service. Plaintiff alleges that there are possibly "several hundred thousand such individuals" and seeks to recover over $5,554.29 for each putative class member.

3. DIRECTV hereby removes this action in good faith under 28 U.S.C. § 1332(d), 28 U.S.C. § 1441, and 28 U.S.C. § 1453.

4. This removal is timely and within the 30-day removal period established by 18 U.S.C. § 1446(b).

5. This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 and in which any class member is a citizen of a state different from any defendant. These requirements for this Court's original jurisdiction exist here.

6. First, diversity of citizenship exists. Plaintiff is a resident of Washington, D.C. DIRECTV is a California corporation with its principal place of business in El Segundo, California. This diversity of citizenship meets the requirements of 28 U.S.C. § 1332(d)(2)(A).

7. Second, the amount in controversy exceeds the sum of $5,000,000 when class claims are aggregated. *See* 28 U.S.C. § 1332(d)(6). Given the more than $5,500 Plaintiff seeks to recover for each putative class member, and the alleged "thousands" of individual class members, the $5,000,000 threshold is easily met, even before taking into account alleged punitive damages and alleged entitlement to attorneys' fees.

8. Accordingly, this Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) and removal is proper here under 28 U.S.C. §§ 1441(a) and 1453. This Court does not have discretion under 28 U.S.C. § 1332(d)(3) to decline to exercise its jurisdiction here.

9.  There are no other named defendants who need to be joined in this Notice of Removal.

10. In compliance with 28 U.S.C. § 1446(a), DIRECTV has attached to this Notice of Removal a copy of all process, pleadings, and orders served upon it in the District of Columbia Superior Court action.

11. In compliance with 28 U.S.C. § 1446(d), DIRECTV is providing notice of this removal to the Plaintiff, and is filing a copy of this Notice of Removal with the Superior Court of the District of Columbia, thereby effecting removal of this action to this Court.

March 26, 2007                              Respectfully submitted by,

                                           KIRKLAND & ELLIS LLP


                                           Marimichael O. Skubel (D.C. Bar No. 294934)
                                           mskubel@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           655 Fifteenth Street, N.W.
                                           Washington, D.C. 20005-5793
                                           Tel: (202) 879-5000
                                           Fax: (202) 879-5200

                                           Michael E. Baumann (D.C. Bar No. 339028)
                                           mbaumann@kirkland.com
                                           Melissa D. Ingalls (D.C. Bar No. 501060)
                                           mingalls@kirkland.com
                                           KIRKLAND & ELLIS LLP
                                           777 S. Figueroa Street, 37th Floor
                                           Los Angeles, California 90017
                                           Tel.: (213) 680-8400
                                           Fax.: (213) 680-8500

                                           Attorneys for Defendant DIRECTV, INC.

3

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing has been served upon the following individuals by hand delivery, on the 26th day of March, 2007:

John T. Szymkowicz
1220 19th Street, N.W., Suite 400
Washington, DC 20036-2438
(202) 862-8500

Attorney for Defendant DIRECTV, Inc.

4

# Exhibit A

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
**500 Indiana Avenue, N.W., Room JM-170**
**Washington, D.C. 20001   Telephone:   879-1133**

J.P. Szynkowicz
1543 44th Street NW
Washington DC 20007-2004 *Plaintiff*

VS.

Civil  Action  No.   **0000690-07**

DirecTV Inc.
2230 East Imperial Highway *Defendant*
El Segundo California 90245
Serve Registered Agent:
(Corporation Service Company **SUMMONS**
1090 Vermont Avenue NW
Washington DC 20005

To  the  above  named  Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government  you have 60 days  after  service  of  this  summons  to serve  your  Answer. A  copy  of  the  Answer must be  mailed   to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.**   If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You  are  also  required  to  file  the  original  Answer  with  the  Court  in  Room  JM 170  at 500 Indiana Avenue.  N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays.  You may file the original Answer  with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment   by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

Name of Plaintiff's Attorney  John T. Szynkowicz

Address   1220 19th Street NW #400
Washington DC
20036-2438

Telephone   202 868-8500

By _____
Deputy Clerk

Date   1/29/07
January 29, 2007

PUEDE  OBTENERSE  COPIAS  DE  ESTE FORMULARIO  EN  ESPANOL  EN  EL  TRIBUNAL  SUPERIOR  DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU  MAY OBTAIN  A COPY OF THIS   FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 93

**NOTE:**  SEE  IMPORTANT  INFORMATION  ON  BACK  OF  THIS  FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

# Superior Court of the District of Columbia

## CIVIL  DIVISION — CIVIL  ACTIONS  BRANCH

## INFORMATION  SHEET

J. P. SZYMKOWICZ     Plaintiff

vs.

Case Number:

Date:

*Name:*

DIRECTV, INC.    Defendant

Firm Name:    John T. Szymkowicz  1220 19th Street NW #400
washington DC ████ 2438
20036

Telephone No.:    Unified Bar No.: 946079
202 862 8500

Relationship to  Lawsuit

◯ Attorney  for  Plaintiff

◯ Self (Pro Se)

Other:

TYPE OF CASE:   ◯ Non-Jury      ● 6 Person Jury      ◯12 Person Jury

Demand:  $  5,554.29 per Class Plaintiff  Other:  Declaratory Relief
Judgment

**PENDING  CASE(S)   RELATED  TO  THE  ACTION  BEING  FILED**

Case No.                 Judge                                    Calendar #

Case No.                 Judge                                    Calendar #

NATURE OF SUIT:   *(Check One Box Only)*

| A. CONTRACTS | | COLLECTION  CASES |
|---|---|---|
| ☐ 01 Breach of Contract | ☐07 Personal Property | ☐ 14 Under $25,000 Pltf. Grants Consent |
| ☐ 02 Breach of Warranty | ☐09 Real Property-Real Estate | ☐ 16 Under $25,000 Consent Denied |
| ☐ 06 Negotiable Instrument | ☐ 12 Specific Performance | ☐ 17 OVER $25,000 |
| ☐ 15 Other: | | |

| B. PROPERTY TORTS | | |
|---|---|---|
| ☐ 01 Automobile | ☐03 Destruction of Private Property | ☐ 05 Trespass |
| ☐ 02 Conversion | ☐04 Property Damage | ☐ 06 Other: |
| ☐ 07 Shoplifting, D.C. Code § 3441 | | |

| C. PERSONAL TORTS | | |
|---|---|---|
| ☐ 01 Abuse of Process | ☐09 Harassment | ☐ 17 Personal Injury |
| ☐ 02 Alienation of Affection | ☐ 10 Invasion of Privacy | ☐ 18 Wrongful Death |
| ☐ 03 Assault and Battery | ☐ 11 Libel and Slander | ☐ 19 Wrongful Eviction |
| ☐ 04 Automobile | ☐ 12 Malicious Interference | ☒20 Other: Consumer Protection |
| ☐ 05 Deceit (Misrepresentation) | ☐ 13 Malicious Prosecution | ☐ 2 1 Asbestos |
| ☐ 06 False Accusation | ☐ 14 Malpractice Legal | ☐22 Toxic/Mass Torts |
| ☐ 07 False Arrest | ☐ 15 Malpractice Medical | |
| ☐ 08 Fraud | ☐ 16 Negligence | |

**D.  OTHERS**

**I.**
- ☐  01  Accounting
- ☐  02  Att. Before Judgment
- ☐  04  Condemnation (Emin. Domain)
- ☐  05  Ejectment
- ☐  07  **Insurance/Subrogation**
  Under $25,000   Pltf.
  **Grants  Consent**
- ☐  08  Quiet Title
- ☐  00  Special Writ (Specify)

- ☐  10 T.R.O./Injunction
- ☐  11  Writ  of  Replevin
- ☐  12  Enforce  Mechanics  Lien
- ☐  16  Declaratory  Judgment
- ☐  17  Merit  Personnel  Act  (D.C.
  Code Title 1, Chapter 6)
- ☐  18  Product  Liability
- ☐  24  Application to Confirm, Modify,

- ☐  25  Other:
- ☐  26  **Insurance/Subrogation**
  **Under $25,000    Consent Denied**
- ☐  27  **Insurance/Subrogation**
  **Over $25,000**



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

J P SZYMKOWICZ
    Vs.
DIRECTV INC

C.A. No.    2007 CA 000690 B

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge JUDITH BARTNOFF
Date:  January 29, 2007
Initial Conference: 9:30 am, Friday, May 11, 2007
Location:  Courtroom 415
        500 Indiana Avenue N.W.
        WASHINGTON, DC 20001

Caio.doc

IN THE DISTRICT OF COLUMBIA SUPERIOR COURT
Civil Division



J.P. SZYMKOWICZ     )
1543 44th Street, N.W.    )
Washington, DC  20007-2004  )
            )
    Representative Plaintiff, )
            )
            )
vs.           )
            )
DIRECTV, INC.      )  Civil Action Number:    **0000690-07**
2230 East Imperial Highway  )
El Segundo, California  90245  )
            )
A California Corporation   )
            )
Serve Registered Agent:   )
            )
  Corporation Service Company )
  1090 Vermont Avenue, N.W. )
  Washington, DC  20005   )
            )
    Defendant.    )

*(Stamp: RECEIVED CIVIL CLERK'S OFFICE JAN 2 9 2007 SUPERIOR COURT OF THE DISTRICT OF COLUMBIA WASHINGTON, DC)*

## CLASS ACTION COMPLAINT
## FOR MONETARY DAMAGES, DECLARATORY JUDGMENT AND
## JURY TRIAL

Plaintiff J.P. Szymkowicz, by and through his attorney, John T. Szymkowicz, sues Defendant DirecTV, Inc. [hereinafter "DirecTV"] on his own behalf and on behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as "DirecTV Plus HD DVR"), respectfully requests this Honorable Court enter an Order:

  a.  Certifying that the instant case as a class action with Plaintiff J.P. Szymkowicz as the Representative Plaintiff and with Attorney John T. Szymkowicz as Class Counsel;

b.  Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents actual damages of $1,851.43 trebled to $5,554.29 or, if greater, statutory damages of $1,500.00 per Class Plaintiff pursuant to D.C. Code § 28-3905 (k) (1) (A);

c.  Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents punitive damages;

d.  Directing DirecTV, Inc. to pay Plaintiff Szymkowicz's and each Class Plaintiff's attorney's fees and court costs in an amount established after trial;

e.  Releasing Plaintiff Szymkowicz and all other Class Plaintiffs from any contractual obligation arising out of the use of DirecTV's HR20 Digital Video Recorder;

f.  Finding that the provision preventing class actions in DirecTV's Customer Agreement to which Plaintiffs are subject is unconscionable;

g.  Finding that the arbitration clause in DirecTV's Customer Agreement to which Plaintiffs is unenforceable since the provision preventing class actions is unconscionable; and

h.  Directing any other relief the Court deems proper.

### The Parties

1.  Representative Plaintiff Szymkowicz is an adult citizen of the United States of America and a resident of the District of Columbia.

2.  Representative Plaintiff Szymkowicz has reason to believe that Class Plaintiffs reside in all fifty states and the District of Columbia.

3.  Defendant DirecTV, Inc. is believed to be a California corporation that has its principal place of business in California and is authorized to conduct business in the District of Columbia.

2

4.    DirecTV is the largest Direct-to-Home satellite TV provider in the U.S.A. and has approximately 15.1 million subscribers.[1]

5.    DirecTV's average revenue per month per subscriber is $69.61.[2]

### Jurisdiction and Venue

6.    Jurisdiction and venue are established in this Honorable Court pursuant to District of Columbia Code Section 11-921.

7.    This Honorable court has personal jurisdiction over Defendant DirecTV, Inc. pursuant to Section 13-423 (a) of the District of Columbia Code since Defendant DirecTV, Inc. transacts business in the District of Columbia, contracts to supply services in the District of Columbia and has caused tortious injury in the District of Columbia.

8.    Plaintiff Szymkowicz's request for a declaratory judgment on the enforceability of the purported class action waiver found in DirecTV's Customer Agreement is made pursuant to D.C. Civil Rule 57.

9.    Plaintiff Szymkowicz's request for class action certification is made pursuant to D.C. Civil Rules 23 and 23-I.

### BACKGROUND FACTS

#### Plaintiff Szymkowicz's Purchase of the DirecTV/Tivo Low-Definition DVR

10.   Plaintiff Szymkowicz has been a DirecTV customer since November 2000.

---

[1]    See DirecTV's 2005 Annual Report, Pages 2-3.

[2]    Id.

11.    From November 2000 to December 2001, Plaintiff Szymkowicz obtained DirecTV service through two traditional DirecTV set top boxes (without Digital Video Recording capabilities).

12.    In December 2001, Plaintiff Szymkowicz purchased a DirecTV/Tivo Digital Video Recorder for $99.26 that replaced the two traditional DirecTV set top boxes.

13.    At the time Plaintiff Szymkowicz purchased the DirecTV/Tivo DVR in December 2001, DirecTV offered its customers a choice:  purchase a "Lifetime" DVR subscription for $249.00 or pay a $10.00 monthly DVR fee.

14.    Plaintiff Szymkowicz chose the "Lifetime" DVR subscription by paying the $249.00 fee to DirecTV on December 25, 2001.

### How the DirecTV/Tivo DVR Revolutionized TV Watching

15.    Plaintiff Szymkowicz enjoyed using his DirecTV/Tivo DVR (as presumably most other DirecTV customers did) since this product lived up to its hype of "Revolutionizing" the way people watch TV.

16.    The DirecTV/Tivo DVR allowed the DirecTV customer to record two different shows on two different channels while watching a third pre-recorded show among other revolutionary features.

17.    Another revolutionary feature of the DirecTV/Tivo DVR was the ability to "pause" live TV and "startup" from the point where the TV show was "paused."

18.    Still another revolutionary feature of the DirecTV/Tivo DVR was the ability to "fast-forward" through commercials.

4

19.    The DirecTV/Tivo DVR differed from traditional Video Cassette Recorders in several respects: the DVR recorded programs on a built-in computer hard disk that did not require videotape, the DVR had a 30 hour capacity, the DVR could record two channels at the same time and the easily-programmed DVR could be set to automatically record all episodes of a certain program, no matter what time or channel the program was shown.

20.    Like other Direct/Tivo DVR customers, Plaintiff Szymkowicz came to rely on his DirecTV/Tivo DVR to automatically record his favorite programs so that he could watch these programs when and how he wanted, not only when and how the television networks wanted its viewers to watch these programs.

21.    Plaintiff Szymkowicz also liked the fact that the Direct/Tivo DVR allowed him to never watch a television commercial again due to the DVR's fast-forward feature.

22.    The only drawback of the DirecTV/Tivo DVR was that it captured video in Low-Definition rather than High-Definition.    (High-Definition Television receivers were extremely rare prior to 2004).

### DirecTV's Announcement of the HR20 High-Definition DVR

23.    Over the years that followed Plaintiff Szymkowicz's purchase of the DirecTV/Tivo DVR in December 2001, the television industry began the mass-market transition of Low-Definition to High-Definition broadcasts and televisions capable of viewing these new High-Definition broadcasts.

5

24.   On January 3, 2006, DirecTV announced its new High-Definition Digital

Video Recorder, the HR20, which would be released in "mid-2006."[3]

25.   DirecTV's January 3, 2006 Press Release stated (in relevant part):

### DIRECTV PLUS(R) HD DVR

The DIRECTV(R) Plus HD DVR (HR20) combines the best
entertainment with unprecedented control and convenience to
create the ultimate TV viewing experience. It brings together the
new DIRECTV Plus DVR and DIRECTV HD Receiver. Viewers
are able to record one HD program while watching another and
record two different shows at the same time, while watching a pre-
recorded program. The DIRECTV Plus HD DVR gives the user
the ability to pause and rewind live HD TV up to 90 minutes, use
instant replay and watch in slow motion. The DIRECTV Plus HD
DVR is able to record more than 30 hours of DIRECTV HD
programming delivered in MPEG-2, or up to 50 hours of
DIRECTV HD programming delivered in MPEG-4, or up to 200
hours of standard-definition programming. In addition, the
DIRECTV Plus HD DVR is MPEG-4 compatible, and is the first
DIRECTV HD receiver with interactive capabilities. DIRECTV
plans to launch the DIRECTV Plus HD DVR at retail mid-2006.

26.   In the months that followed DirecTV's announcement of the HR20,

Plaintiff Szymkowicz read several media reports concerning the upcoming release

of this product and was excited due to the fact that he planned to upgrade to a

High-Definition television set after he moved into a new house and DirecTV's

HR-20 DVR seemed to be the perfect High-Definition Digital Video Recorder to

complement a new High-Definition television set.

---

[3]   See DirecTV Press Release dated January 3, 2006 entitled "DirecTV
Continues to Deliver the Best Television Experience Available;   DirecTV
Showcases Original Programming, High-Definition Broadcasts and Advanced
Products and Services at CES" which is attached to the instant Complaint as
Exhibit 1.

### Plaintiff Szymkowicz's Move to the District of Columbia

27.    Plaintiff Szymkowicz temporarily suspended his DirecTV account in May
2006 since he was in the process of moving from Virginia to the District of
Columbia.

28.    Upon moving into the District of Columbia in July 2006, Plaintiff
Szymkowicz was saddened to hear that DirecTV had delayed release of the
HR20.

29.    Because of the delay of the HR20, Plaintiff Szymkowicz obtained Cable
TV service from RCN, which included DVR functionality, rather than having
DirecTV install a Low-Definition satellite receiver for a few months and then
returning to install a 5 LNB satellite receiver capable of receiving High-Definition
signals that the HR20 requires.

### DirecTV's Release of the HR20 High-Definition DVR

30.    Sometime in October 2006, DirecTV officially released the HR20
nationwide and published the features of this product on its website:

> THE FUTURE OF TELEVISION HAS ARRIVED
> DIRECTV PLUS HD DVR
>
> With an additional 66% of high-definition storage and the latest
> DVR and HD technology combined in one, the new DirecTV Plus
> HD DVR will change the way you enjoy home theater. Images are
> sharper. Colors are brighter. Sound is crisper. And now they can
> be recorded.
>
> WATCH TV THE WAY YOU WANT
>
> •    View and record both standard-definition and high-
> definition content. And, coming in late-2006, record off-air digital
> broadcasts where available

7

• Pause and rewind live TV for up to 90 minutes so you never miss the action

• Create your own instant replays with slow motion. Watch using full screen, stretched, letterbox, pillar box or crop mode for optimal viewing

• Listen to superb theater-like sound with Dolby Digital 5.1 technology

• View and log who's calling right on the screen with Caller ID from your local phone company

WATCH YOUR FAVORITES WHEN YOU WANT

• Watch one show as you record two more shows to your receiver - at the same time

• Record your favorite shows with a single button

• Schedule recordings of an entire season, even if the date and time change

• Record up to 200 hrs of standard definition or 50 hrs of high definition

INFORMATION AT YOUR FINGERTIPS

• Search the Channel Guide up to 14 days in advance

• Search and record your favorite shows via performer, title or topic

• Parental Controls keeps your family safe and your mind at peace

• Get weather information, lottery results and horoscopes onscreen with the DirecTV Active Channel[4]

---

[4]     See http://www.directv.com/DTVAPP/global/contentPage. jsp?assetId=900025m, a printout of which is attached to the instant Complaint as Exhibit 2.

31.    Plaintiff Szymkowicz had been anxiously waiting for the release of DirecTV's HR20 and was excited to view the final specifications for this product on DirecTV's website.

### Plaintiff Szymkowicz's Orders of the HR20

32.    On October 24, 2006, a short time after viewing DirecTV's website announcing the final specifications of the HR20, Plaintiff Szymkowicz ordered an HR20 from Best Buy's website for $299.99 plus $10.26 for shipping and handling and $17.84 for tax, arranged for DirecTV's contractors to install service at Plaintiff Szymkowicz's home and discontinued his Cable TV service from RCN.

33.    On October 26, 2006, DirecTV contractors installed and activated Plaintiff Szymkowicz's HR20 on his living room television, but an installation problem with the satellite receiver on the roof prevented the full operation of the DVR until November 18, 2006.

34.    Also on November 18, 2006, Plaintiff Szymkowicz ordered a second HR20 for his bedroom television from Circuit City's website for $299.99 plus $17.25 for tax.

35.    Plaintiff Szymkowicz's second HR20 was installed on December 9, 2006 with an installation fee of $50.00 paid directly to the installers.

### Terms of DirecTV's "Lease Upgrade" with regard to the HR20

36.    Unlike the DirecTV/Tivo DVR, which Plaintiff Szymkowicz originally purchased for $99.26, the HR20 was not sold to customers at all, but rather was "leased" for an "upgrade" fee of $299.99.

9

37.   According to the terms of the "Lease Upgrade" program, Plaintiff Szymkowicz must pay the $299.99 "Lease Upgrade" fee, DirecTV supplies the HR20, and Plaintiff Szymkowicz is required to "purchase" 24 consecutive months of any "TOTAL CHOICE" programming package at a rate of $44.99 per month or above.[5]

38.   In addition, the "Lease Upgrade" program requires that Plaintiff Szymkowicz "must activate and maintain DVR service" at a rate of $5.99 per month or above. Id.

39.   Finally, the "Lease Upgrade" program requires that Plaintiff Szymkowicz pay a $4.99 monthly fee for each additional HR20 activated on the account. Id.

40.   If Plaintiff Szymkowicz "fail[s] to maintain [his] programming commitment, [Plaintiff Szymkowicz] agrees that DirecTV may charge [him] a prorated fee of up to $150 for standard equipment or $300 for advanced products within 7 days of downgrading or disconnecting [the] programming." Id.

41.   Plaintiff Szymkowicz has subscribed to the following DirecTV programming packages: "TOTAL CHOICE PLUS" for $48.99 per month and HBO for $12.00 per month.

### Plaintiff Szymkowicz's Problems with the DirecTV H20 DVR

42.   Almost immediately after completing the installation process on the first HR20 on November 18, 2006, Plaintiff Szymkowicz noticed problems in the operation and performance of the unit.

---

[5]      See DirecTV Order Confirmation dated November 13, 2006 that is attached to the instant Complaint as Exhibit 3.

43.    In addition to failing to record many programs that Plaintiff Szymkowicz

had scheduled to record, Plaintiff Szymkowicz's HR20 frequently failed to

perform as promised by:

    a.    Recording a program, but immediately on playback, the
        program would show a grey or black screen with the words

            "Would you like to delete this recording?
                    Yes, Delete
                 No, Don't Delete"

    b.    Failing to pause Live TV;

    c.    Failing to rewind Live TV;

    d.    Failing to "buffer" Live TV so that customer can "toggle"
        or "flip" between channels on the two tuners in the HR20
        and be able to watch the part of the program missed on the
        one tuner while watching the program on the other tuner;
        and

    e.    "Locking up" upon pausing or rewinding Live TV so that
        the customer must change the channel in order to return to
        Live TV (and in the process, lose the part of the program
        played during the time it takes to change the channel and
        return to the original channel since the "buffer" feature
        frequently fails to perform.

44.    The HR20 also frequently "locked up" requiring a reset or restart in order

to watch TV again.

45.    From the end of November through the beginning of December, Plaintiff

Szymkowicz placed numerous calls to DirecTV's Technical Support Department

in order to fix these problems with the HR20.

46.    During each one of these calls, Plaintiff Szymkowicz was forced to wait at

least several minutes to navigate through the technical support phone options and

for a transfer to a "Level 2 - DVR Technical Support Consultant."

11

47.    During many of these calls, the DirecTV Technical Support Consultant advised "resetting" the HR20 in order to fix the problems, but after trying this, Plaintiff Szymkowicz found that this solution never resulted in success.

48.    Finally, in mid-December, a DirecTV Technical Support Consultant admitted that DirecTV was having many problems with customers' HR20's and shipped Plaintiff Szymkowicz a replacement, which arrived on December 15, 2006.

49.    Not only did the replacement HR20 fail to perform as promised, but the second HR20 that Plaintiff Szymkowicz purchased for his bedroom television also failed to perform as promised.

50.    After several more calls to DirecTV's Technical Support Department in order to fix the problems he was having with his two HR20's, Plaintiff Szymkowicz learned from a DirecTV Technical Support Consultant that the problems that Plaintiff Szymkowicz was having were software related, and thus, a new HR20 would not likely fix the problems.

51.    After learning that it was the software and not the hardware that was causing the problems with Plaintiff Szymkowicz's HR20's, Plaintiff Szymkowicz asked a DirecTV Technical Support Consultant when the problem would be fixed, but was not given an answer other than "Our engineers are working on the issue."

52.    Plaintiff Szymkowicz then asked the DirecTV Technical Support Consultant to refund the two "lease upgrade" fees he paid to DirecTV and release him from his contractual obligations related to the "purchase" of the "lease upgrades," but the DirecTV Technical Support Consultant rejected this request.

12

## DirecTV's Knowledge of Problems with the HR20 Digital Video Recorder

53.    At all times DirecTV advertised the HR20 and placed the HR20 into retail distribution chains, it knew that the HR20 did not satisfactorily perform the functions of a Digital Video Recorder such as allowing users to:

    a.    record programs that these users scheduled;

    b.    pause Live TV;

    c.    rewind Live TV; and

    d.    "buffer" Live TV on two channels using the HR20's two built-in tuners.

54.    Moreover, at all times DirecTV advertised the HR20 and placed the HR20 into retail distribution chains, it knew that the HR20 frequently "locked up" requiring a reset or restart in order to watch TV again.

55.    Despite its knowledge that the HR20 did not work as described in promotional materials, DirecTV made several false representations as to material facts with regard to the HR20, specifically that the HR20 could regularly and reliably:

    a.    record programs that users scheduled;

    b.    pause Live TV;

    c.    rewind Live TV; and

    d.    "buffer" Live TV on two channels using the HR20's two built-in tuners.

56.    DirecTV made these statements concerning the HR20's specifications and capabilities in promotional materials associated with the HR20, specifically, and

13

with DirecTV service, in general, including the HR20 sub-webpage on DirecTV's website, www.directv.com, in-store advertisements and DirecTV press releases.

57.    DirecTV made these statements as to the HR20's specifications and capabilities with actual knowledge of the falsity of these statements.

58.    DirecTV made these statements in order to deceive its customers and potential customers into purchasing the HR20 and subscribing to DirecTV's services.

### Plaintiff Szymkowicz's Claim for Actual Damages

59.    As a direct and proximate result of relying on the false representations that DirecTV made concerning the capabilities and specifications of the HR20, Plaintiff Szymkowicz took action in reliance upon these representations, specifically, purchasing two HR20's via DirecTV's "Lease Upgrade" program and entering into a two year contract to receive DirecTV programming.

60.    Plaintiff Szymkowicz suffered the following damages as a direct and proximate result of DirecTV's failure to deliver a HR20 that performs as promised:

        a.    $299.99 plus $10.26 for shipping and handling and $17.84 for tax (Total = $328.09) for the first HR20;

        b.    $299.99 plus $17.25 (Total = $317.24) for tax for the second HR20;

        c.    $50.00 installation for the second HR20;

        d.    "TOTAL CHOICE PLUS" for $48.99 per month;

        e.    HD Package Fee of $9.99 per month;

        f.    DVR Service Charge of $5.99 per month;

    g.      Additional Receiver Fee of $4.99 per month; and

    h.      HBO for $12.00 per month.

61.    Since DirecTV's Technical Support Consultants have indicated that DirecTV does not know when DirecTV will fix the problems with the HR20, Plaintiff Szymkowicz's damages will continue to accrue at the daily rates set forth in the preceding paragraph until the problems are fixed.

62.    If DirecTV never fixes the problems with the HR20, Plaintiff Szymkowicz (who has already paid two "Lease Upgrade" Fees for his HR20's and subscribes to TOTAL CHOICE PLUS for $48.99 per month, the HD Package for $9.99 per month, HBO for $12.00 per month, who must pay an Additional Receiver Fee of $4.99 per month and has prepaid a Lifetime DVR Fee for which DirecTV currently charges $5.99 per month) will, over the twenty-four month contract period, suffer damages of $2,584.97.[6]

63.    If DirecTV never fixes the problems with the HR20, Class Plaintiffs who only subscribe to TOTAL CHOICE at $44.99 per month, the HD Package for

---

[6]      This $2,584.97 figure is computed as follows: $328.09 (initial cost of first HR20 "Lease Upgrade") + $317.24 (initial cost of second HR20 "Lease Upgrade") = $645.33 (Equipment Cost). $48.99 (monthly TOTAL CHOICE PLUS Fee) x 24 months + $9.99 (HD Package Fee) x 24 months + $5.99 (DVR Service Fee) x 24 months + $12.00 (HBO Fee) x 24 months = $1,847.28 (Subscription Sub-Total before Tax). $1,847.28 (Subscription Sub-Total before Tax) x 5% (Sales Tax Rate) = $92.36 (Tax on Subscription). $1,847.28 (Subscription Sub-Total before Tax)+ $92.36 (Tax on Subscription)= $1,939.64 (Subscription Total). $645.33 (Equipment Cost) + $1,939.64 (Subscription Total) = **$2,584.97 (Total)**.

15

$9.99 per month, and who must pay a DVR Fee of $5.99 per month will, over the twenty-four month contract period, suffer actual damages of $1,851.43.[7]

## Plaintiff Szymkowicz's Claim for Punitive Damages

64.    Plaintiff Szymkowicz's punitive damage claim is based upon DirecTV's false and misleading representations concerning the HR20's specifications and capabilities.

65.    As fully stated in the section of the instant Complaint entitled "DirecTV's Knowledge of Problems with the HR20 Digital Video Recorder," DirecTV made false and misleading representations concerning the HR20's specifications and capabilities in promotional materials associated with the HR20 with knowledge of the falsity of these representations.

66.    Even though DirecTV had actual knowledge of the falsity of its representations concerning the HR20's specifications and capabilities, it continued to market and sell the HR20 to customers such as Plaintiff Szymkowicz.

67.    Punitive damages are warranted since DirecTV acted with fraud, evil motive, actual malice, ill will, recklessness, wantonness, oppressiveness, willful disregard of Plaintiff Szymkowicz's rights and/or other circumstances that tended to aggravate Plaintiff Szymkowicz's injuries because DirecTV knew that the HR20 did not perform to the specifications and capabilities promised in

---

[7]    This $1,851.43 figure is computed as follows:  $299.99 (initial cost of HR20 "Lease Upgrade") + $44.99 (monthly TOTAL CHOICE Fee) x 24 months + $9.99 (HD Package Fee) x 24 months + $5.99 (DVR Service Fee) x 24 months = $$ (Sub-Total before Tax).  $1,763.27 (Sub-Total before Tax) x 5% (Sales Tax Rate) = $88.16 (Tax).  $1,763.27 Sub-Total (before Tax) + $88.16 (Tax) = **$1,851.43 (Total)**.

promotional materials associated with the HR20, yet DirecTV continued to market and sell the HR20 to customers such as Plaintiff Szymkowicz.

### DirecTV's Customer Agreement[8]

68.    The DirecTV Customer Agreement dated May 1, 2006 that currently governs the delivery of DirecTV service to its customers, including Plaintiff Szymkowicz, includes the following paragraph entitled "Resolving Disputes":

### Paragraph #9: RESOLVING DISPUTES

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a)    Informal Resolution:    We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9 (d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

(b)    Formal Resolution:    Except as provided in Section 9 (d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.** You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state. Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to

---

[8]    See DirecTV Customer Agreement dated May 1, 2006 that is attached to the instant Complaint as Exhibit 4.

pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules. The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration. To start an arbitration, you or we must do the following things:

> (1)    Write a Demand for Arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at jamsadr.com.

> (2)    Send three copies of the Demand for Arbitration, plus the appropriate filing fee to:

**JAMS**
**500 North State College Blvd., Suite 600**
**Orange, CA  92868**
**1-800-352-5267**

> (3)    Send one copy of the demand for arbitration to the other party.

(c)    <u>Special Rules</u>:      (i)  In the arbitration proceeding, the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so. Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state court that has jurisdiction. (ii) Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration. If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable.

(d)    Exceptions:     Notwithstanding the foregoing: (i) any Claim based on Section 1 (i) above, and (ii) any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 or any other statement or law governing theft of service, may be decided only by a court of competent jurisdiction.

69.    Moreover, the May 1, 2006 DirecTV Customer Agreement provides in Paragraph 10 (b):

> Applicable Law:    The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you.  This Agreement is subject to modification if required by such laws.  Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

70.    In Cohen v. DirecTV, Inc., 142 Cal. App. 4th 1442 (California Court of Appeal, 2nd Appellate District, Division 8, September 18, 2006), the court held that the clause in DirecTV's Customer Agreement that attempts to prevent customers' claims from being brought as class actions was unconscionable and thus unenforceable.

## CLASS ACTION ALLEGATIONS

71.    Pursuant to D.C. Civil Rule 23 and 23-1, Plaintiff Szymkowicz seeks certification under Rule 23 (c) (1) that the case be maintained as a class action with the claims alleged by Plaintiff Szymkowicz as Representative Plaintiff.

### Definition of Class

72.    The class that Plaintiff Szymkowicz seeks to represent is defined as all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirectTV HR20 (also known as "DirecTV Plus HD DVR").

73.    Plaintiff Szymkowicz does not know at this time how many such potential class members there are, but does know from reading media accounts of the introduction of the HR20, speaking to DirecTV employees about the HR20 and

reading postings on DirecTV website's "Technical Help Forum" section entitled "High Definition Digital Video Recording (HD DVR's)"[9] that there are more than several thousand such individuals, possibly more than several hundred thousand such individuals (considering that there are 15.1 million total DirecTV customers).

74.     Plaintiff Szymkowicz believes that many, if not most or even all of these potential class members, have had the same problems with the HR20 that Plaintiff Szymkowicz has had (and has previously described in the instant Complaint).

75.     Therefore, the class is so numerous that joinder of all members is impracticable pursuant to D.C. Civil Rule 23 (a) (1).

76.     There are questions of law and fact common to the class pursuant to D.C. Civil Rule 23 (a) (2), including,

    a.      Does the HR20 fail to perform as advertised?;

    b.      If the HR20 did fail to perform as advertised, what remedy (including monetary damages) is appropriate to compensate each class member?;

    c.      Is DirecTV's attempt to dispense with class action procedures unconscionable?

77.     Plaintiff Szymkowicz's claims are typical of the claims or defenses of the class pursuant to D.C. Civil Rule 23 (a) (3) since he has the same product as the other potential class members (the HR20), is subject to the same terms and conditions of DirecTV service to which other potential class members are subject,

---

[9]     This website may be accessed at http://forums.directv.com/pe/action/forums/defaultview?msgBoardID=10156613.  See also DirecTV's 2005 Annual Report, Pages 2-3.

20

and has suffered the same technical problems with the HR20 as the other potential class members.

78.    Plaintiff Szymkowicz and his attorneys will fairly and adequately protect the interests of the class pursuant to D.C. Civil Rule 23 (a) (4) since both Plaintiff Szymkowicz and his counsel are attorneys with extensive experience in litigating complex and high-profile cases.

79.    The prosecution of separate actions by individual members of the class would create a risk of:

a.    Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class pursuant to D.C. Civil Rule 23 (b) (1) (A), or

b.    Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests pursuant to D.C. Civil Rule 23 (b) (1) (B).

80.    DirecTV, Inc. has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole pursuant to D.C. Civil Rule 23 (b) (2).

81.    As previously described, there are questions of law and fact common to the members of the class that predominate over any questions affecting only individual members pursuant to D.C. Civil Rule 23 (b) (3).

82.    The class action is superior to other available methods for the fair and efficient adjudication of the controversy pursuant to D.C. Civil Rule 23 (b) (3)

21

since there are many potential class plaintiffs with similar problems with the HR20's performance as Plaintiff Szymkowicz has, and therefore, since the amounts in controversy in each potential class plaintiffs' case is relatively small from a monetary point of view, the most efficient way of disposing of these claims is through a class action.

83.     Plaintiff Szymkowicz does not believe that any class member has an interest in individually controlling the prosecution of separate actions pursuant to D.C. Civil Rule 23 (b) (3) (A) since the amounts in controversy in each potential class plaintiffs' case is relatively small from a monetary point of view.

84.     Plaintiff Szymkowicz does not believe that any class member has filed any action concerning the facts at issue in this controversy pursuant to D.C. Civil Rule 23 (b) (3) (B).

85.     Plaintiff Szymkowicz believes that it is desirable to concentrate this litigation in the District of Columbia Superior Court pursuant to D.C. Civil Rule 23 (b) (3) (C) since the District of Columbia is easily accessible via airplane from anywhere in the United States and because the Civil Rules of the District of Columbia Superior Court are based on the Federal Rules of Civil Procedure.

86.     Plaintiff Szymkowicz does not believe that there will be any unusual difficulties that are likely to be encountered in the management of this class action pursuant to D.C. Civil Rule 23 (b) (3) (D).

## COUNTS

### Count I - Declaratory Judgment
### on Issue of Enforceability of Class Action Waiver

87.    The allegations contained in Paragraphs 1-86 of the instant Complaint are incorporated herein as if fully stated.

88.    For the reasons stated in <u>Cohen v. DirecTV, Inc.</u>, 142 Cal. App. 4th 1442 (California Court of Appeal, 2nd Appellate District, Division 8, September 18, 2006), Plaintiff Szymkowicz respectfully requests that this Honorable Court also find the clause in DirecTV's Customer Agreement that attempts to prevent customers' claims from being brought as class actions is unconscionable and thus unenforceable.

WHEREFORE, Plaintiff J.P. Szymkowicz, on his own behalf and on behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as "DirecTV Plus HD DVR"), respectfully requests this Honorable Court enter an Order:

      a.    Certifying that the instant case as a class action with Plaintiff J.P. Szymkowicz as the Representative Plaintiff and with Attorney John T. Szymkowicz as Class Counsel;

      b.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents actual damages of $1,851.43 trebled to $5,554.29;

      c.    Finding that the provision preventing class actions in DirecTV's Customer Agreement to which Plaintiffs are subject is unconscionable;

23

    d.      Finding that the arbitration clause in DirecTV's Customer Agreement to which Plaintiffs is unenforceable since the provision preventing class actions is unconscionable; and

    e.      Directing any other relief the Court deems proper.

## Count II - Breach of Contract

89.    The allegations contained in Paragraphs 1-86 of the instant Complaint are incorporated herein as if fully stated.

90.    Plaintiff Szymkowicz entered into a contract with DirecTV when he purchased a "Lease Upgrade" on the HR20.

91.    By purchasing the "Lease Upgrade" on the HR20, Plaintiff Szymkowicz was required to "purchase" 24 consecutive months of any "TOTAL CHOICE" programming package at a rate of $44.99 per month or above and also "activate and maintain DVR service" at a rate of $5.99 per month or above.

92.    DirecTV accepted this contract by agreeing to provide satellite television service, including DVR functionality, to Plaintiff Szymkowicz.

93.    DirecTV breached this contract by failing to provide Plaintiff Szymkowicz with working satellite television service, including DVR functionality.

94.    As a direct and proximate result of DirecTV's breach of its contract, Plaintiff Szymkowicz suffered damages set forth previously in the section of the instant Complaint entitled "Plaintiff Szymkowicz's Claim for Actual Damages."

95.    Punitive damages against DirecTV are appropriate based on the factors previously set forth in the section of the instant Complaint entitled "Plaintiff Szymkowicz's Claim for Punitive Damages."

24

WHEREFORE, Plaintiff J.P. Szymkowicz, on his own behalf and on behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as "DirecTV Plus HD DVR"), respectfully requests this Honorable Court enter an Order:

a.    Certifying that the instant case as a class action with Plaintiff J.P. Szymkowicz as the Representative Plaintiff and with Attorney John T. Szymkowicz as Class Counsel;

b.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents actual damages of $1,851.43 trebled to $5,554.29;

c.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents punitive damages;

d.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz's and each Class Plaintiff's attorney's fees and court costs in an amount established after trial;

e.    Releasing Plaintiff Szymkowicz and all other Class Plaintiffs from any contractual obligation arising out of the use of DirecTV's HR20 Digital Video Recorder; and

f.    Directing any other relief the Court deems proper.

## **Count III - Fraudulent Misrepresentation**

96.    The allegations contained in Paragraphs 1-86 of the instant Complaint are incorporated herein as if fully stated.

97.    At all times DirecTV advertised the HR20 and placed the HR20 into retail distribution chains, it knew that the HR20 did not satisfactorily perform the functions of a Digital Video Recorder such as allowing users to:

25

      a.     record programs that these users scheduled;

      b.     pause Live TV;

      c.     rewind Live TV; and

      d.     "buffer" Live TV on two channels using the HR20's two
             built-in tuners.

98.    Moreover, at all times DirecTV advertised the HR20 and placed the HR20

into retail distribution chains, it knew that the HR20 frequently "locked up"

requiring a reset or restart in order to watch TV again.

99.    Despite its knowledge that the HR20 did not work as described in

promotional materials, DirecTV made several false representations as to material

facts with regard to the HR20, specifically that the HR20 could regularly and

reliably:

      a.     record programs that users scheduled;

      b.     pause Live TV;

      c.     rewind Live TV; and

      d.     "buffer" Live TV on two channels using the HR20's two
             built-in tuners.

100.   DirecTV made these statements concerning the HR20's specifications and

capabilities in promotional materials associated with the HR20, specifically, and

with DirecTV service, in general, including the HR20 sub-webpage on DirecTV's

website, www.directv.com, in-store advertisements and DirecTV press releases.

101.   DirecTV made these statements as to the HR20's specifications and

capabilities with actual knowledge of the falsity of these statements.

102.    DirecTV made these statements in order to deceive its customers and potential customers into purchasing the HR20 and subscribing to DirecTV's services.

103.    As a direct and proximate result of relying on the false representations that DirecTV made concerning the capabilities and specifications of the HR20, Plaintiff Szymkowicz took action in reliance upon these representations, specifically, purchasing two HR20's via DirecTV's "Lease Upgrade" program and entering into a two year contract to receive DirecTV programming.

104.    The HR20's that DirecTV provided to Plaintiff Szymkowicz failed to regularly or reliably:

  a.  record programs that users scheduled;

  b.  pause Live TV;

  c.  rewind Live TV; and

  d.  "buffer" Live TV on two channels using the HR20's two built-in tuners.

105.    As a direct and proximate result of DirecTV's actions, Plaintiff Szymkowicz suffered damages set forth previously in the section of the instant Complaint entitled "Plaintiff Szymkowicz's Claim for Actual Damages."

106.    Punitive damages against DirecTV are appropriate based on the factors previously set forth in the section of the instant Complaint entitled "Plaintiff Szymkowicz's Claim for Punitive Damages."

  WHEREFORE, Plaintiff J.P. Szymkowicz, on his own behalf and on behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV

HR20 (also known as "DirecTV Plus HD DVR"), respectfully requests this

Honorable Court enter an Order:

    a.    Certifying that the instant case as a class action with Plaintiff J.P. Szymkowicz as the Representative Plaintiff and with Attorney John T. Szymkowicz as Class Counsel;

    b.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $1,851.43 per Class Plaintiff, which represents actual damages;

    c.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents punitive damages;

    d.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz's and each Class Plaintiff's attorney's fees and court costs in an amount established after trial;

    e.    Releasing Plaintiff Szymkowicz and all other Class Plaintiffs from any contractual obligation arising out of the use of DirecTV's HR20 Digital Video Recorder; and

    f.    Directing any other relief the Court deems proper.

### Count IV - Violations of the District of Columbia Consumer Protection Procedures Act

107. The allegations contained in Paragraphs 1-86 of the instant Complaint are incorporated herein as if fully stated.

108. By marketing and selling the HR20 in a condition that did not perform to specifications and capabilities set forth in the promotional materials associated with the HR20 with knowledge of such fact, DirecTV "represented" that the HR20 had "a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have" in violation of D.C. Code § 28-3904 (a).

28

109.    By marketing and selling the HR20 in a condition that did not perform to specifications and capabilities set forth in the promotional materials associated with the HR20 with knowledge of such fact, DirecTV represented that the "goods or services are of [a] particular standard, quality, grade, style, or model," when, in fact, they "are of another" in violation of D.C. Code § 28-3904 (d).

110.    By marketing and selling the HR20 in a condition that did not perform to specifications and capabilities set forth in the promotional materials associated with the HR20 with knowledge of such fact, DirecTV "misrepresented" "a material fact" that "tends to mislead," specifically that the HR20 failed to perform to specifications and capabilities set forth in the promotional materials associated with the HR20 in violation of D.C. Code § 28-3904 (e).

111.    By marketing and selling the HR20 in a condition that did not perform to specifications and capabilities set forth in the promotional materials associated with the HR20 with knowledge of such fact, DirecTV "failed to state a material fact" that "tends to mislead," specifically that the HR20 failed to perform to specifications and capabilities set forth in the promotional materials associated with the HR20 in violation of D.C. Code § 28-3904 (f).

112.    As a direct and proximate result of DirecTV's actions, Plaintiff Szymkowicz suffered damages set forth previously in the section of the instant Complaint entitled "Plaintiff Szymkowicz's Claim for Actual Damages."

113.    Punitive damages against DirecTV are appropriate based on the factors previously set forth in the section of the instant Complaint entitled "Plaintiff Szymkowicz's Claim for Punitive Damages."

WHEREFORE, Plaintiff J.P. Szymkowicz, on his own behalf and on behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as "DirecTV Plus HD DVR"), respectfully requests this Honorable Court enter an Order:

a.    Certifying that the instant case as a class action with Plaintiff J.P. Szymkowicz as the Representative Plaintiff and with Attorney John T. Szymkowicz as Class Counsel;

b.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents actual damages of $1,851.43 trebled to $5,554.29, or, if greater, statutory damages of $1,500.00 per Class Plaintiff pursuant to D.C. Code § 28-3905 (k) (1) (A);

c.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz and each Class Plaintiff an amount to be proven at trial that is expected to be in excess of $5,554.29 per Class Plaintiff, which represents punitive damages pursuant to D.C. Code § 28-3905 (k) (1) (C);

d.    Directing DirecTV, Inc. to pay Plaintiff Szymkowicz's and each Class Plaintiff's attorney's fees and court costs in an amount established after trial pursuant to D.C. Code § 28-3905 (k) (1) (B);

e.    Releasing Plaintiff Szymkowicz and all other Class Plaintiffs from any contractual obligation arising out of the use of DirecTV's HR20 Digital Video Recorder; and

f.    Directing any other relief the Court deems proper.

## JURY DEMAND

Representative Plaintiff Szymkowicz demands trial by jury as to all issues so triable.

30

Respectfully submitted,

John T. Szymkowicz (#946079)
1230 19th Street, N.W., Suite 400
Washington, DC  20036-2438
(202) 862-8500

Attorney for Plaintiff J.P. Szymkowicz

31

**DIRECTV Investor Relations**

## DIRECTV INVESTOR RELATIONS

News Release

 View printer-friendly version

<< Back

**DIRECTV Continues to Deliver the Best Television Experience Available; DIRECTV Showcases Original Programming, High-Definition Broadcasts and Advanced Products and Services at CES**

EL SEGUNDO, Calif.--(BUSINESS WIRE)--Jan. 3, 2006--Showcasing the strength and breadth of its leadership position in digital TV products and services, DIRECTV, Inc., will unveil a robust display of original programming, high-definition (HD) services and advanced products at the 2006 International Consumer Electronics Show in Las Vegas.

Throughout 2006, DIRECTV will roll out new products, including DIRECTV 2Go, a new service for portable media players, a new HD DVR and a professional home theatre system, as well as expand many of its advanced products and services, including HD local broadcasts and new on-demand features. DIRECTV customers will also have access to original programming - including a new channel dedicated to original entertainment- developed exclusively for DIRECTV customers.

"The introduction of new advanced products and services opens the door for an entirely new wave of programming on the DIRECTV platform that will lead our category in new directions," said Chase Carey, DIRECTV president and CEO. "As the television viewing experience evolves, DIRECTV continues to innovate, delivering new and expanded services that will provide the best television viewing experience - when, where and how our customers want it."

    Featured DIRECTV Products, Programming and Services at CES 2006

    DIRECTV On-Demand

    NBC Networks On Demand via DIRECTV Plus(R) DVR

Beginning in first quarter of 2006, DIRECTV will provide consumers with access to the top programs of NBC and its cable entertainment networks, USA, SCI FI and Bravo, within hours after they air, commercial free, for just 99 cents. The programs will be available on demand through the new DIRECTV Plus interactive DVR. DIRECTV will provide in-booth demonstrations of the DIRECTV Plus DVR, including its ability to deliver on-demand programming.

The DIRECTV Plus DVR is the most advanced DVR available on the market, with features such as 100 hours of recording capacity, interactive functionality, one-touch recording and Viewmarks, which enable viewers to mark favorite places in recorded programs and jump directly to them. The DIRECTV Plus DVR takes the viewing experience to new levels by offering the widest array of network primetime programming available on demand.

    DIRECTV Original Entertainment

    Music Programming

The cornerstone of DIRECTV's original programming venture is CD USA, which will premiere Saturday, Jan. 21, 2006, and deliver the largest selection of back-to-back-to-back performances available on television. Broadcast in standard and high-definition, the weekly hour-long show will feature live performances from a mix of music genres, including pop, indie, rock and urban. CD USA will entertain DIRECTV's more than 15 million customers with the latest news on new releases, exclusive interviews, gossip, behind-the-scenes reports, and a private peek inside the world of music idols.

In addition to the interviews and performances of CD USA, DIRECTV customers can also access exclusive entertainment programming through Network LIVE, a joint venture with Network LIVE, America Online, XM Satellite Radio, AEG and DIRECTV. Broadcast in standard and high-definition, Network LIVE brings DIRECTV customers live, premier performances from both multi-platinum and emerging artists that can't be seen anywhere else on television.

ALL-STATE LEGAL®

EXHIBIT

1

# THE FUTURE OF TELEVISION HAS ARRIVED

## DIRECTV Plus® HD DVR



With an additional 66% of high-definition storage and the latest DVR and HD technology combined in one, the new DIRECTV Plus® HD DVR will change the way you enjoy home theater. Images are sharper. Colors are brighter. Sound is crisper. And now they can be recorded.

**Order Now**    View Interactive Demo

## ▶ WATCH TV THE WAY YOU WANT



* View and record both standard-definition and high-definition content. And, coming in late 2006, record off-air digital broadcasts where available*
* Pause and rewind live TV for up to 90 minutes so you never miss the action
* Create your own instant replays with slow motion. Watch using full screen, stretched, letterbox, pillar box or crop mode for optimal viewing
* Listen to superb theater-like sound with Dolby® Digital 5.1 technology
* View and log who's calling right on the screen with Caller ID from your local phone company**

## WATCH YOUR FAVORITES WHEN YOU WANT





* Watch one recorded show as you record another channel to your receiver—at the same time†
* Record your favorite shows with a single button
* Schedule recordings of an entire season, even if the date and time change
* Record up to 200 hrs of standard definition or 50 hrs of high definition††

## INFORMATION AT YOUR FINGERTIPS





* Search the Channel Guide up to 14 days in advance
* Search and record your favorite shows via performer, title or topic
* Parental Control keeps your family safe and your mind at peace
* Get weather information, lottery results and horoscopes onscreen with the DIRECTV Active® Channel

To find out more about our newest technological breakthrough, check out the Quick Start Guide and the technical specifications. Tips & Tricks are also available so you can get the most from your new system.

To learn about how the DIRECTV Plus HD DVR can help you share pictures, music and more from your Viiv-enabled computer, visit our Technical Help Forum.†††



To access DIRECTV HD programming, a Triple-LNB or 5-LNB Multi-Satellite Dish, a DIRECTV HD Receiver and HD television equipment are required. *In cities where local HD programs are available via off-air antenna, reception may vary based on geographic location. Programs not delivered in HD in all markets. ATSC tuner functionality for viewing digital and HD broadcasts received from an off-air antenna will not be available until later this year. A software download will be pushed to the HR20 via the satellite before the end of the year to enable this functionality. Professional installation highly recommended. Land-based phone line connection required. **To use this feature you must have your receiver directly plugged into a telephone outlet and a wireless phone jack and must subscribe to Caller ID or other caller identification service from your phone company. †Professional installation highly recommended. Land-based phone line connection required. ††Actual recording time varies depending on the type of programming being recorded. †††The Viiv feature is able to pull most formats of music and photos from your PC and play them through the model HR20 DIRECTV Plus HD DVR. Requires Ethernet cable from the HR20 connected to consumer's home network along with Viiv-enabled PC and router. Viiv installation has indexed with DIRECTV service. Manufactured under license from Dolby Laboratories. Dolby and the double-D symbol are registered trademarks of Dolby Laboratories. Enjoy with Viiv logo is a trademark of Intel Corporation. ©2006 DIRECTV, Inc. DIRECTV, the Cyclone Design logo and DIRECTV Active are trademarks of DIRECTV, Inc. All other trademarks and service marks are the property of their respective owners.

EXHIBIT

2

ALL-STATE LEGAL®

1 of 2           1/26/07 6:45

00371165-8_000

# DIRECTV.

November 13, 2006

J.P. Szymkowicz
1543 44th St NW
Washington, DC 20007-2004
IııIıIIIııIIııIIııIııIıIıIIIııIIııIıIıIıIıIıIIIıIıI

DIRECTV Account Number: 17071051                DIRECTV Order Number: 30074964

Dear J.p. Szymkowicz,

Thank you for choosing DIRECTV and accepting our hardware lease or purchase offer for current customers. Below is a summary of your order as well as the terms of the offer. DIRECTV agrees to provide you a standard professional installation that includes:

- Routing of cable to your TV and receiver through an exterior wall or from your basement/attic and connection to an existing phone jack within 25 feet.
- Connecting one TV and VCR to each DIRECTV® Receiver ordered.
- Installing a dual LNB, multi-switch or both if necessary to operate the additional receiver(s).

You must activate and maintain DVR service if you ordered a DVR or HD DVR ($5.99/mo.), unless you have TOTAL CHOICE® PREMIER or SELECCIÓN PREMIER™ programming. The DVR service is included with these two packages.

If you would like to reschedule your installation appointment, please go online to DIRECTV.com/installations or call 1-888-355-7530.

You're all set! Thanks again for participating in our offer.

Sincerely,

DIRECTV, Inc.

---

## This is not a bill. This letter serves as your receipt. Please retain it for your records.

### ORDER CONFIRMATION

| Qty. | Description | Each | |
|------|-------------|------|---|
| 0 | DIRECTV« Expanded HD Dish Only Package | $0.00 | |
| | Professional Installation | $0.00 | |
| | Handling and Delivery | $0.00 | |
| | Tax | $0.00 | |
| | Total | $0.00 | |

EXHIBIT
3
ALL-STATE LEGAL®

Please refer to your DIRECTV Lease Addendum for the Terms and Conditions regarding your leased equipment.
If you leased equipment or purchased a dish upgrade, by placing this order you have agreed to the following terms:

- FAILURE TO ACTIVATE ALL OF THE DIRECTV SYSTEM EQUIPMENT IN ACCORDANCE WITH THE EQUIPMENT LEASE ADDENDUM MAY RESULT IN A CHARGE OF $150 PER RECEIVER NOT ACTIVATED.
- If you cancel your order prior to installation, we will issue a full refund including the handling/delivery fee.
- Offer requires you to purchase 12 consecutive months (24 consecutive months for advanced equipment) of any TOTAL CHOICE® ($44.99/mo. or above) or DIRECTV PARA TODOS® programming package ($29.99/mo. or above)
- You must activate and maintain DVR service if you ordered a DVR or HD DVR ($5.99/mo.). In certain markets, programming and pricing may vary. DIRECTV PROGRAMMING AND PRICING SUBJECT TO CHANGE AT ANY TIME.
- You accept the $4.99/mo. lease fee for the second and each additional receiver.
- Your receiver must be continuously connected to a land-based phone line to activate certain sports programming and to allow pay per view ordering by remote control.
- If you fail to maintain your programming commitment, you agree that DIRECTV may charge you a prorated fee of up to $150 for standard equipment or $300 for advanced products within 7 days of downgrading or disconnecting your programming.
- Leased equipment must be returned upon disconnect. If you do not return equipment, DIRECTV may charge a fee up to $55 per standard, $200 per DVR, $240 per HD receiver and/or $470 per HD DVR.
- If you cease to be DIRECTV's customer for any reason (whether voluntarily or involuntarily), you must call DIRECTV at 1-800-531-5000 within five (5) days after the termination of your DIRECTV programming services to (i) make arrangements for DIRECTV to pick up all of your DIRECTV equipment; or (ii) obtain information from DIRECTV necessary to arrange for a ground or air freight service to pick up and deliver all of your DIRECTV equipment to DIRECTV.
- You and DIRECTV agree that any dispute arising under or relating to your agreements or service with DIRECTV, which cannot be resolved informally, will be resolved through binding arbitration as fully set forth in your DIRECTV Customer Agreement (a copy is sent with your first bill but may also be viewed at DIRECTV.com/legal). Arbitration means you waive your right to a jury trial.

PMCM



ALL-STATE LEGAL®

EXHIBIT 4

# DIRECTV®
# CUSTOMER
# AGREEMENT

Effective as of May 1, 2006, until replaced

THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING. TO VIEW THIS AGREEMENT IN SPANISH VISIT DIRECTV.COM/ACUERDO OR CALL 1-888-388-6622 TO REQUEST A PRINTED COPY. (VISITE A DIRECTV.COM/ACUERDO O LLAME AL 1-888-388-6622 PARA SOLICITAR ESTE DOCUMENTO.)

**CONTACTING DIRECTV:**

You may contact us 24 hours a day, any day of the year, by calling 1-800-531-5000 or by writing to:

> DIRECTV, Inc.
> Customer Service
> P.O. Box 29079
> Glendale, CA 91209-9079

You can also visit our website at DIRECTV.com.

If your bill for DIRECTV Service comes from a party other than DIRECTV, please use the contact information provided on your bill for any questions about your DIRECTV Service.

Thank you for choosing DIRECTV. DIRECTV provides digital satellite entertainment programming and services (referred to collectively as "Service") to residents of the United States. We do not provide Service to addresses outside of the United States.

**CUSTOMER AGREEMENT**

**1.  OUR SERVICE**

These are the terms on which we will provide you Service and other services:

(a)  Program Choices. You must subscribe to a base package in order to receive additional Services such as premium movie services or sports subscriptions. All programming selections have their own rates, terms and conditions. Information about programming is at DIRECTV.com.

(b)  Ordering Pay Per View. You may order pay per view Services by using your on-screen guide and remote control, at DIRECTV.com or by calling us. If you call to order or order online, a fee may apply (described in Section 2). To use your remote control to order, your receiver must be continuously connected to a land-based telephone line. Your order is transmitted via the telephone line and during the short transmission period you may not be able to use the line for other purposes. Repeated cancellation of previously ordered pay per view Services may result in cancellation of your account, restrictions on your ability to order pay per view Services, or imposition of

additional fees for pay per view Services.

(c)  Your Programming Changes. You may change your programming selection by notifying us. A fee may apply to such changes (described in Sections 2 & 5(b)). Some programming may be purchased in minimum blocks of one month or multiples of one month.

(d)  Our Programming Changes. Many changing considerations affect the availability, cost and quality of programming and customer demand for it. Accordingly, we must reserve the unrestricted right to change, rearrange, add or delete our programming packages, the selections in those packages, our prices, and any other Service we offer, at any time. We will endeavor to notify you of any change that is within our reasonable control and its effective date. In most cases, this notice will be about one month in advance. You always have the right to cancel your Service, in whole or in part, if you do not accept the change (see Section 5). If you cancel your Service, a deactivation fee (described in Sections 2 & 5(b)) or other charges may apply. Credits, if any, to your account will be posted as described in Section 5. If you do not cancel, your continued receipt of our Service will constitute acceptance.

(e)  Access Card. You have received a conditional access card (referred to as the "Access Card") and a License Agreement governing your use of the Access Card while you are receiving our Service. Access Cards are nontransferable and are the exclusive property of DIRECTV. If you tell us that the original Access Card was lost, damaged, defective or stolen, we will replace it, as long as there is no evidence of unauthorized tampering with or modification of the Access Card and your account is in good standing. A replacement fee may apply (described in Section 2). Tampering with or other unauthorized modification of the Access Card is strictly prohibited and may result in criminal or civil action. Tampering with or inserting any device into your receiver other than an authorized unmodified Access Card is prohibited. DIRECTV reserves the right to cancel or replace the Access Card. Upon request, the card must be returned to DIRECTV. If you do not return the Access Card to DIRECTV when you cancel your Service, you may be charged a fee as described in Section 2. Requesting Access Cards on behalf of other persons or for purposes other than lawful viewing of DIRECTV Service is prohibited.

(f)  Additional TVs. If you add separate Service on additional TVs, you may purchase a separate subscription for each TV. Or, if all your receivers are continuously connected to the same land-based phone line, we can "mirror" the programming to your additional TVs and charge you only the fee amount described in Section 2. Pay per view programming ordered by remote control cannot be mirrored and can be viewed only on the TV for which it is purchased. You agree to provide true and accurate information about the location of your receivers.

(g)  Phone Connections. Your receiver must always be directly connected to a land-based telephone line to receive certain Service, such as sports subscriptions and your local regional sports services network, and to be authorized to order with your remote control. If it is not so connected, or if it is connected to a line other than the one you tell us, or if the line is not performing according to our requirements, we may deactivate the applicable Service. If we do, you will still be responsible for all Services purchased through the date of deactivation. Your receivers must also be connected to the same land-based telephone line in order to be eligible to pay the additional TV fee (see 1(f)) rather than purchase a separate subscription for each additional TV.

(h)  Mobile Units. We provide Service to Receiving Equipment installed in mobile units such as campers, boats and other recreational vehicles. However, without a permanent land-based phone connection, this Receiving Equipment is not eligible for the additional TV authorization discount described in 1(f), ordering with the remote control, or certain sports programming described in 1(g).

(i)  Private Viewing. We provide Service only for your private non-commercial use, enjoyment and home viewing. The programming

may not be viewed in areas open to the public or in commercial establishments. You may not rebroadcast, transmit or perform the programming, charge admission for its viewing or transmit or distribute running accounts of it. You may not use any of our trademarks. Notwithstanding the provisions of Section 9, we or any programming provider may prosecute violations of the foregoing against you and other responsible parties in any court of competent jurisdiction, under the rules and regulations of the Federal Communications Commission and other applicable laws.

(j)  Blackouts. Certain programming, including sports events, may be blacked out in your local reception area. Blackout restrictions are decided by the sports leagues and the other entities that own the local broadcast rights. You may visit DIRECTV.com for more blackout information. If you circumvent or attempt to circumvent any of these blackouts, you may be subject to legal action.

(k)  Loss of Receiving Equipment. You should notify us immediately if your receiver, remote control or receiving antenna dish (referred to collectively as "Receiving Equipment") is lost or stolen. If you notify us within 5 days, we will not charge you for unauthorized use. In any case, we will not charge you for unauthorized use occurring after we receive your notice. For leased Receiving Equipment, non-return fees as specified in the Equipment Lease Addendum will apply.

(l)  Transfer of Receiving Equipment. We consider you to be responsible for, and the recipient of programming on, any Receiving Equipment you own. You are liable for charges incurred in the use of your Receiving Equipment by others until you notify us of a transfer. Leased Receiving Equipment may not be transferred.

(m)  Your Viewing Restrictions. It is your responsibility to impose any viewing restrictions on other family members or guests, as you think appropriate. We are not responsible to you or anyone else based on the content of our programming. Please visit DIRECTV.com for information on parental controls, locks and limits and password protection on your account.

(n)  Change of Address. You must notify us immediately of any change in your name, mailing address, residence address or telephone number.

**2.  PAYMENT**

In return for receiving our Service, you promise to pay us as follows:

(a)  Programming. You will pay in advance, at our rates in effect at the time, for all Service ordered by you or anyone who uses your Receiving Equipment, with or without your permission, until the Service is canceled. The outstanding balance is due in full each month. We may, in our discretion, accept partial payments, which will be applied to the oldest outstanding statement. No "payment in full" notation or other restrictive endorsement written on your payments will restrict our ability to collect all amounts owing to us. We may reduce your service to a minimum service level at our rates in effect at the time, or deactivate your Service if you do not pay your statements on time, after any applicable grace period.

(b)  Taxes. You will pay all taxes or other governmental fees and charges, if any, which are assessed.

(c)  Administrative Fees. In order to control the basic charges, which apply to all customers, we charge fees that arise in specific circumstances only to those customers responsible for them. This list is not exclusive, and DIRECTV reserves the right to modify these fees or charge additional fees. Accordingly, you will pay the following fees when they are applicable.

(1)  Account Activation Fee: We may charge you a fee of: (i) up to $50.00; or (ii) the maximum amount permitted under applicable law prior to or upon activation of your Service account, whichever is less.

(2)  Access Card Replacement Fee: If you do not return the Access Card when requested to do so, or if we have to replace the Access Card, we may charge you a replacement fee of up to $300.00. If you return the old Access

Card to us, you may receive partial credit to your account. If you request overnight delivery of the replacement Access Card, you must pay a shipping and handling fee of **up to $16.50.**

(3)   *Additional TV Authorization Fee:* If you meet the qualifications described in Section 1(f), we may charge you a monthly fee of **up to $4.99** for separate Services on each additional TV, rather than a full subscription fee for Services on each additional TV. This reduced rate is available only if all receivers are located at your residence and are continuously connected to the same land-based telephone line. If not, you will be responsible for the full amount of our programming charges for each TV.

(4)   *Administrative Late Fee:* **If we do not receive your payment by the due date on your bill, we may charge you an administrative late fee of the lesser of (i) up to $5.00; or (ii) the maximum amount permitted under and subject to applicable law per month or partial month until the delinquent amount is paid in full.** This late fee is not an interest charge, finance charge, time price differential or other such charge or payment of a similar nature. You acknowledge that this fee is reasonably related to the actual expense we incur due to late payment and may be subject to limitations set forth by law in your state.

(5)   *Change of Service Fee:* If you change your Service package to a lower-priced package, we may charge you a fee the lesser of (i) **up to $10.00;** or (ii) the maximum amount permitted by applicable law.

(6)   *Phone Payment Fee.* If you elect to pay any outstanding balance over the telephone we may charge you the lesser of (i) **up to $5.50;** or (ii) the maximum amount permitted by applicable law.

(7)   *Deposits:* We may require that you provide a deposit prior to or after activation of your Service, which we may apply against any unpaid amounts at any time. Deposits will appear on your bills as credits, from which we will deduct our charges. Deposits will not earn interest.

(8)   *Order-Assistance Fee:* If you order a pay per view Service by calling us or online, we may charge you a fee of **up to $5.00** for each separate movie, event or other program so ordered, even if it is later canceled.

(9)   *Deactivation Fee:* If you cancel your Service or we deactivate your Service because of your failure to pay or for some other breach on your part, we may charge you a fee the lesser of (i) **up to $15.00;** or (ii) the maximum amount permitted by applicable law.

(10)  *Duplicate Statement Fee:* If you request a duplicate statement, we may charge you a fee the lesser of (i) **up to $1.75;** or (ii) the maximum amount permitted by applicable law for each statement copy.

(11)  *Ledger Request Fee.* If you request a payment ledger itemizing past payments on your account, we may charge you a fee the lesser of (i) **up to $2.75;** or (ii) the maximum amount permitted by applicable law.

(12)  *Returned Payment Fee:* If any bank or other financial institution refuses to honor any payment, draft or instrument submitted for payment to your account, we may charge you a fee the lesser of (i) **up to $20.00;** or (ii) the maximum amount permitted by applicable law. You acknowledge that this fee is not an interest charge, finance charge, time price differential or other such charge or payment of a similar nature and it is reasonably related to the actual expense we incur due to unsatisfied payment.

(d)   *Billing Statements.* We will send you a statement for each billing cycle (usually once every 30 days) unless you have a zero or nominal balance due, or a nominal credit balance, on your account at the end of a billing cycle. Statements will show: (1) payments, credits, purchases and any other charges to your account (2) the amount you owe us and (3) the payment due date. If you elect to make automatic credit or debit card payments, you will not receive monthly statements unless you request that

they be sent.

(e)   *Questions About Your Statement.* If you think your statement is incorrect or if you need more information about it, contact us immediately. We will try to resolve any complaints you have as promptly as we can.

**Undisputed portions of the statement must be paid by the due date to avoid a late fee and possible reduction or deactivation of Service.**

Remember, if your bill for DIRECTV Service comes from a party other than DIRECTV, please use the contact information on your bill.

(f)   *Consents Regarding Credit.* In order to establish an account with us, you authorize us to inquire into your creditworthiness (subject to Section 6), by checking with credit reporting agencies. If you are delinquent in any payment to us, you also authorize us to report any late payment or nonpayment to credit reporting agencies. Due to the subjective nature of creditworthiness, we reserve the right to require prepayment for any Service via cashier's check, money order or credit card, notwithstanding your credit rating, past history or practice.

(g)   *Collection Costs.* To the extent permitted by law, you will pay us any costs and fees we reasonably incur to collect amounts you owe us.

## 3.   CUSTOMER INFORMATION

(a)   *Representations.* You represent that you are at least 18 years of age and a resident of the United States.

(b)   *Contact Information.* You agree to provide true, accurate, current and complete contact information about yourself, and maintain and promptly update your contact information to keep it true, accurate and complete.

(c)   *Online Access.* You are responsible for maintaining the confidentiality of the password and account username used for online billing and account maintenance at DIRECTV.com, and are fully responsible for all activities that occur under your password and account. You agree to: (i) keep your username and password confidential and not share them with anyone else; (ii) immediately notify DIRECTV of any unauthorized use of your password and account or other breach of security and (iii) use only your username and password to log into DIRECTV.com.

## 4.   CHANGES IN CONTRACT TERMS

We reserve the right to change the terms and conditions on which we offer Service. If we make any such changes; we will send you a copy of your new Customer Agreement containing its effect ve date. You always have the right to cancel your Service, in whole or in part at any time, and you may do so if you do not accept any such changed terms or conditions. If you do cancel, you may be charged an early cancellation fee if you entered into a separate programming commitment or a deactivation fee. You will be issued a credit, if any, in accordance with Section 5. If you elect not to cancel your Service after receiving a new Customer Agreement, your continued receipt of Service from us will constitute acceptance of the changed terms and conditions. If you notify us that you do not accept such terms and conditions, then we may cancel your Service as provided in Section 5, as we cannot offer Service to different customers on different terms.

## 5.   CANCELLATION

(a)   *Term.* The term of this Agreement 's indefinite and Service will continue until canceled as provided herein. UNLESS YOU NOTIFY US THAT YOU WISH TO CANCEL IT, WE WILL AUTOMATICALLY RENEW SERVICE THAT YOU SUBSCRIBE TO ON A PERIODIC BASIS, INCLUDING ANY MONTHLY OR ANNUAL SUBSCRIPTIONS AND SEASONAL SPORTS SUBSCRIPTIONS, AS LONG AS WE CONTINUE TO CARRY THE SERVICE.

(b)   *Your Cancellation.* You may cancel Service by notifying us. You may be charged a deactivation fee as described in Section 2 and issued a credit as described below. Your notice is effective on the day we receive it. You will still be responsible for payment of all outstanding balances accrued through that effective date. In addition to any deactivation or change of service fees provided in Section 2, if you cancel Service or change your Service package, you may be subject to an early cancellation fee if you

entered into a separate programming commitment with DIRECTV in connection with obtaining Receiving Equipment, and have failed to maintain the required programming package for the required period of time.

For Services sold only in blocks of one month or multiples of one month, if you cancel such Service, we will credit you only for full months not used. For example, if you subscribe for a year of such Service from January through December but cancel on March 10, we will credit you for the subscription fees for April through December. However, we will not credit any fees for January through March. Additionally, we will not credit seasonal sports subscriptions after the season starts.

(c)   *Our Cancellation.* We may cancel your Service at any time if you fail to pay amounts owing to us when due, subject to any grace periods, breach any other material provision of this Agreement, or act abusively toward our staff. In such case, you will still be responsible for payment of all outstanding balances accrued through that effective date, including the deactivation fee described in Section 2. In addition, we may cancel your Service if you elect not to accept any changed terms described to you, as provided in Section 4.

(d)   *Credit Balances.* If you have a credit balance after the close of your account and issuance of the final bill, we will automatically issue you a refund. However, if your credit balance is less than $1.00, we will not issue you a refund unless you make a written request for the refund. If you do not make such a written request for the refund within one year of the close of your account, you forfeit any credit balance remaining on your account and your account balance will be reset to zero.

## 6.   PERSONAL DATA

We collect Personally Identifiable Information about our customers ("Personal Data"). The use and disclosure of this Personal Data is governed by our Privacy Policy and, to the extent not inconsistent with the Privacy Policy, by this Agreement. A copy of our Privacy Policy is available at DIRECTV.com. We will also send you a copy if you send your written request to this address: DIRECTV Privacy Policy, P.O. Box 29079, Glendale, CA 91209-9079.

## 7.   DIRECTV® DVR SERVICE

DIRECTV DVR Service is a separately sold service, at our rates in effect at the time, available to customers with DVR-enabled Receiving Equipment. DIRECTV DVR Service gives you the ability to see and record televised programs ("Third Party Content") You understand that DIRECTV does not guarantee the access to or recording of any particular program, or the length of time any particular recorded program may remain available for your viewing. You also understand that Third Party Content is the copyrighted material of the third party that supplies it, is protected by copyright and other applicable laws, and may not be reproduced, published, broadcast, rewritten or redistributed without the written permission of the third party that supplied it, except to the extent allowed under the "fair use" provisions of the U.S. copyright laws or comparable provisions of foreign laws You agree that DIRECTV will have no liability to you, or anyone else who uses your DIRECTV DVR Service, with regard to any Third Party Content. DIRECTV may, at its discretion, from time to time change, add or remove features of the DIRECTV DVR Service, or change the service fee for DIRECTV DVR Service.

We generally use local telephone calls to provide the DIRECTV DVR Service. You are responsible for such telephone charges and acknowledge and agree that you shall be solely responsible for all disputes with any telephone company related to the same.

If you paid a "lifetime service fee," you will not be charged a fee for your DIRECTV DVR Service as long as you maintain television programming service from DIRECTV on the same account. If you disconnect your DIRECTV television programming service and later reconnect on the same account, your DIRECTV DVR Service will be reconnected and you will not be charged a fee for DIRECTV DVR Service.

By receiving the DIRECTV DVR Service, you agree to the following license. The term "Software" shall include any updates, modified versions, additions and copies of certain software for the DIRECTV DVR Service (or your Receiving Equipment) that may be provided by DIRECTV from time to time. The term "End User Documentation" shall mean the documentation and related explanatory written materials provided to you in connection with licensing by you of any Software. DIRECTV grants to you a non-exclusive license to use the Software, provided that you agree to the following:

(a) License Grant. You may use the Software solely in executable code form and solely in conjunction with the use of your Receiving Equipment.

(b) Restrictions. You may not copy, modify, transfer, disseminate or publish the Software, or any copy thereof, in whole or in part. You may not reverse engineer, disassemble, decompile or translate the Software, or otherwise attempt to derive the source code of the Software, except to the extent allowed under any applicable law. Any attempt to transfer any of the rights, duties or obligations of this license agreement is void. You may not rent, lease, load, resell for profit or distribute the Software, or any part thereof.

(c) Ownership. The Software is licensed, not sold, to you solely for your use under the terms of this license agreement, and DIRECTV and its suppliers reserve all rights not expressly granted to you. You shall own the media, if any, on which Software or End User Documentation is recorded, but DIRECTV and its suppliers retain ownership of all copies of the Software itself.

(d) Reservation of Rights. Except as stated above, this license agreement does not grant to you any intellectual property rights in the Software.

(e) Term. If you breach any term or condition of this license agreement, this license agreement will terminate immediately upon notice to you.

(f) Warranty Disclaimer. NEITHER DIRECTV NOR ANY OF ITS REPRESENTATIVES MAKES OR PASSES ON TO YOU OR OTHER THIRD PARTIES ANY WARRANTY OR REPRESENTATION ON BEHALF OF DIRECTV OR ITS SUPPLIERS (INCLUDING TIVO) WITH RESPECT TO THE SOFTWARE INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT OF THIRD PARTY RIGHTS.

(g) Limitation of Liability. IN NO EVENT WILL DIRECTV OR ITS SUPPLIERS BE LIABLE TO YOU WITH RESPECT TO THE SOFTWARE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES, INCLUDING LOST PROFITS OR LOST SAVINGS, EVEN IF DIRECTV OR ITS SUPPLIERS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR ANY CLAIM BY ANY THIRD PARTY. Some states or jurisdictions do not allow the exclusion or limitation of incidental, consequential or special damages, so the above limitations may not apply to you.

(h) Third-Party Beneficiary. DIRECTV and you expressly acknowledge and agree that TiVo, Inc., a Delaware corporation with its principal place of business at 2160 Gold Street, Alviso, CA 95002, is an intended third-party beneficiary of this license agreement as it relates to TiVo software that may be contained in the Receiving Equipment. These license provisions are made expressly for the benefit of TiVo and are enforceable by TiVo in addition to DIRECTV.

### 8.  LIMITS ON OUR RESPONSIBILITY

(a) Service Interruptions. Service may be interrupted from time to time for a variety of reasons. We are not responsible for any interruptions of Service that occur due to acts of God, power failure or any other cause beyond our reasonable control. However, because we value our customers, for an interruption of a significant length of time that is within our reasonable control, upon your request we will provide what we reasonably determine to be a fair and equitable adjustment to your account to make up for such Service interruption. THIS WILL BE YOUR SOLE REMEDY AND OUR SOLE DUTY IN SUCH CASES.

(b) Disclaimers. EXCEPT AS EXPRESSLY PROVIDED HEREIN, WE MAKE NO WARRANTY OR REPRESENTATION, EITHER EXPRESS OR IMPLIED, REGARDING ANY SERVICE OR YOUR RECEIVING EQUIPMENT. ALL SUCH WARRANTIES OR REPRESENTATIONS, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT ARE DISCLAIMED.

(c) Limitations of Liability. WE ARE NOT RESPONSIBLE FOR ANY CONSEQUENTIAL DAMAGES OR LOSSES RELATING TO THE RECEIVING EQUIPMENT OR ANY SERVICE, WHETHER BASED ON NEGLIGENCE OR OTHERWISE. REGARDLESS OF THE CAUSE, OUR TOTAL LIABILITY FOR DAMAGES OR LOSSES TO YOU AND ANY OTHER PERSONS RECEIVING OUR SERVICE, WILL IN NO EVENT EXCEED THE AMOUNT THAT YOU HAVE PAID TO US FOR THE SERVICE THAT YOU RECEIVED DURING THE SIX (6) MONTH PERIOD IMMEDIATELY PRIOR TO THE SPECIFIC EVENT THAT GAVE RISE TO THE APPLICABLE DAMAGE OR LOSS. THIS ALLOCATION OF RISK IS REFLECTED IN OUR PRICES. You may have greater rights than described above under your state's laws. You should consult them.

(d) Warranty Services. You agree that this Agreement does not provide for, and the Service does not include, any warranty services or other services that we might provide separately, including, without limitation, any fee-based or other warranty programs.

### 9.  RESOLVING DISPUTES

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a) Informal Resolution. We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9(d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

(b) Formal Resolution. Except as provided in Section 9(d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.** You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state. Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules. The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration. To start an arbitration, you or we must do the following things:

(1) Write a Demand for Arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at jamsadr.com.

(2) Send three copies of the Demand for Arbitration, plus the appropriate filing fee to:

JAMS
500 North State College Blvd., Suite 600
Orange, CA 92868
1-800-352-5267

(3) Send one copy of the demand for arbitration to the other party.

(c) Special Rules. (i) In the arbitration proceeding, the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so. Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state court that has jurisdiction. (ii) Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration. If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable.

(d) Exceptions. Notwithstanding the foregoing: (i) any Claim based on Section 1(i) above, and (ii) any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 or any other statement or law governing theft of service, may be decided only by a court of competent jurisdiction.

### 10.  MISCELLANEOUS

(a) Notice. Notices to you will be deemed given when personally delivered, addressed to you at your last known address and deposited in the U.S. Mail (which may include inclusion in your billing statement), or sent via internet to the e-mail address you provided us or sent via satellite to your receiver or delivered when a voice message is left at the telephone number on your account. Your notices to us will be deemed given when we receive them at the address or telephone number on the first page of this Agreement.

(b) Applicable Law. The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you. This Agreement is subject to modification if required by such laws. Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

(c) Assignment of Account. We may assign your account or this Agreement and all rights and/or obligations hereunder to any third party without notice for any purpose, including, without limitation, collection of unpaid amounts, or in the event of an acquisition, corporate reorganization, merger or sale of substantially all of the party's assets to another entity. You hereby consent to such assignment. You must continue making all required payments to us in accordance with your billing statement, unless notified otherwise.

(d) Other. This Agreement and any lease, activation, programming, or other service commitment agreement that you entered into in connection with obtaining Receiving Equipment constitute our entire agreement. No salesperson or other representative is authorized to change it. If any provision is declared by a competent authority to be invalid, that provision will be deleted or modified to the extent necessary, and the rest of the Agreement will remain enforceable. The terms of this Agreement that expressly or by their nature survive termination shall continue thereafter until fully performed.

**THANK YOU.**

©2006 DIRECTV, Inc. DIRECTV and the Cyclone Design logo are registered trademarks of DIRECTV, Inc. C3706 26799CSS

IN THE DISTRICT OF COLUMBIA SUPERIOR COURT
Civil Division

J.P. SZYMKOWICZ )
)
      Representative Plaintiff, )
)    Case Number: CA-2007-690-B
vs. )
)    Judge Judith Bartnoff
DIRECTV, INC. )
)
      Defendant. )

## MOTION FOR DECLARATORY JUDGMENT ON THE ISSUE OF THE UNCONSCIONABILITY OF THE CLASS ACTION WAIVER AND THE RESULTING UNENFORCEABILITY OF THE ARBITRATION CLAUSE

### Oral Hearing Requested

Pursuant to D.C. Civil Rule 57, Representative Plaintiff J.P. Szymkowicz,

by and through his attorney, John T. Szymkowicz, on his own behalf and on

behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's

Digital Video Recording service and who receive this service via the DirecTV

HR20 (also known as "DirecTV Plus HD DVR"), for the following reasons,

respectfully requests this Honorable Court enter an Order finding that:

    a.    the DirecTV Customer Agreement at issue in the instant litigation is a contract of adhesion in a consumer context;

    b.    the class action waiver in the DirecTV Customer Agreement is "indisputably one-sided;"

    c.    the sums involved in the instant proposed class action are "sufficiently small that the class action is likely the only effective way to redress conduct that deprives DirecTV's customers" of the full benefit of the HR20 Digital Video Recorder's functionalities;

    d.    "because DirecTV's prohibition on class claims in arbitration effectively operates to insulate DirecTV from

liability for its conduct, the class action waiver is unconsceable and unenforceable;"

e. Because DirecTV's Customer Agreement states that "[i]f the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable," Plaintiff Szymkowicz is under no obligation to submit his claims against DirecTV to arbitration and thus, Plaintiff Szymkowicz's claims are properly brought in this Honorable Court; and

f. Directing any other relief the Court deems proper.

## Background

1. Representative Plaintiff Szymkowicz has sued Defendant DirecTV, Inc., on behalf of a class of DirecTV customers who have purchased DirecTV's HR20 Digital Video Recorder (DVR) via "Lease Upgrades."

2. Plaintiff Szymkowicz contends that, among other problems, the HR20 does not properly record programs or "buffer" Live TV as a Digital Video Recorder should.

3. Plaintiff Szymkowicz contends that DirecTV released the HR20 to its customers with knowledge that the HR20 did not perform as advertised.

## DirecTV's Customer Agreement[i]

4. The DirecTV Customer Agreement dated May 1, 2006 that currently governs the delivery of DirecTV service to its customers, including Plaintiff Szymkowicz, includes the following paragraph entitled "Resolving Disputes":

### Paragraph #9: RESOLVING DISPUTES

In order to expedite and control the cost of disputes, you and we agree that any legal or equitable claim relating to this Agreement,

---

[i] See DirecTV Customer Agreement dated May 1, 2006 that is attached to the instant Complaint as Exhibit 1.

2

any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

(a)    Informal Resolution:    We will first try to resolve any Claim informally. Accordingly, neither of us may start a formal proceeding (except for Claims described in Section 9 (d) below) for at least 60 days after one of us notifies the other of a Claim in writing. You will send your notice to the address on the first page of this Agreement, and we will send our notice to your billing address.

(b)    Formal Resolution:    Except as provided in Section 9 (d), if we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration.    The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated (referred to as the "JAMS Rules") and under the rules set forth in this Agreement. If there is a conflict between JAMS Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.** You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law. If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state. Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs of the arbitration proceeding. Other fees, such as attorney's fees and expenses of travel to the arbitration will be paid in accordance with JAMS Rules. The arbitration will be held at a location in your hometown area unless you and we both agree to another location or telephonic arbitration. To start an arbitration, you or we must do the following things:

(1)    Write a Demand for Arbitration. The demand must include a description of the Claim and the amount of damages sought to be recovered. You can find a copy of a Demand for Arbitration at jamsadr.com.

(2)    Send three copies of the Demand for Arbitration, plus the appropriate filing fee to:

**JAMS**
**500 North State College Blvd., Suite 600**

3

**Orange, CA  92868**
**1-800-352-5267**

(3)    Send one copy of the demand for arbitration to the other party.

(c)    <u>Special Rules</u>:    (i) In the arbitration proceeding, the arbitrator has no authority to make errors of law, and any award may be challenged if the arbitrator does so.  Otherwise, the arbitrator's decision is final and binding on all parties and may be enforced in any federal or state court that has jurisdiction.  (ii) Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity.  Accordingly, you and we agree that the JAMS Class Action Procedures do not apply to our arbitration.  If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable.

(d)    Exceptions:    Notwithstanding the foregoing: (i) any Claim based on Section 1 (i) above, and (ii) any dispute involving a violation of the Communications Act of 1934, 47 U.S.C. § 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201, the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 or any other statement or law governing theft of service, may be decided only by a court of competent jurisdiction.

5.    Moreover, the May 1, 2006 DirecTV Customer Agreement provides in

Paragraph 10 (b):

<u>Applicable Law</u>:    The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local area where Service is provided to you.  This Agreement is subject to modification if required by such laws.  Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

**ARGUMENT**

**I.    THE CLASS ACTION WAIVER PROVISION IN DIRECTV'S CUSTOMER AGREEMENT IS UNCONSCIONABLE AND THUS, UNENFORCEABLE FOR THE REASONS STATED IN <u>COHEN V. DIRECTV, INC.</u>**

4

The class action waiver provision in DirecTV's Customer Agreement is unconscionable, and thus, unenforceable for the reasons stated in <u>Cohen v. DirecTV, Inc.</u>, 142 Cal. App. 4th 1442 (California Court of Appeal, 2nd Appellate District, Division 8, September 18, 2006).

**A.    District of Columbia law is silent on the issue of class action waivers in arbitration agreements.**

Plaintiff Szymkowicz believes that District of Columbia law is silent on the issue of class action waivers in arbitration agreements. Moreover, since Plaintiff Szymkowicz is seeking to certify a nationwide class action, the most appropriate law to apply throughout the entire litigation is the law of the State of California, which is the place of DirecTV's incorporation and where DirecTV has its headquarters. Therefore, this Honorable Court should look to the law of California for guidance on the issue of the class action waiver.

**B.    <u>Cohen v. DirecTV, Inc.</u> holds that the class action waiver provision in DirecTV's Customer Agreement is unconscionable, and thus, unenforceable.**

<u>Cohen v. DirecTV, Inc.</u> holds that the class action waiver provision in DirecTV's Customer Agreement is unconscionable, and thus, unenforceable. In <u>Cohen</u>, the plaintiff filed suit against DirecTV in the Superior Court of Los Angeles on behalf of a class of DirecTV customers who claim that DirecTV has degraded some of its High-Definition channels to a Low-Definition resolution. <u>Id.</u> at 1445. DirecTV responded to Mr. Cohen's suit by moving to compel

5

arbitration pursuant to the class action waiver in the DirecTV Customer Agreement.[2] Id. at 1446.

### 1.    Unconscionability.

Unconscionability has both procedural and substantive elements. Id. at 1449. The procedural element focuses on oppression or surprise due to unequal bargaining power, and generally takes the form of a contract of adhesion. Id. The substantive element focuses on overly harsh or one-sided results, with substantively unconscionable terms generally described as "unfairly one-sided." Id. Procedural and substantive unconscionability are evaluated on a sliding scale in relation to one another. Id. at n.9. The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. Id.

### 2.    The DirecTV Customer Agreement is a contract of adhesion.

The DirecTV Customer Agreement is a contract of adhesion. In Cohen, the court found that the DirecTV Customer Agreement is a "consumer contract of adhesion" since DirecTV customers are given the agreement "in the form of a 'bill stuffer' that the customer is "deemed to accept if he did not close his account." Id. at 1451. The court in Cohen also observed that

> "under DirecTV's customer agreement, customers may be faced with termination fees if they cancel their service, and that agreement does not provide for reimbursement of customers' equipment costs if they opt not to accept all amendments DirecTV chooses to send. These circumstances make opting out more burdensome on DirecTV's customers than was the case for cardholders in Discover Bank v. Superior Court, 113 P.3d 1100

---

[2]    Plaintiff Szymkowicz has reason to believe that the DirecTV Customer Agreement in Cohen is the same Customer Agreement in the instant case.

(Cal. 2005), heightening the evidence of procedural unconscionability." Cohen, 142 Cal. App. 4th at 1451, n.10.

### 3.    Discover Bank v. Superior Court.

In Cohen, the court relied upon the decision in Discover Bank, 113 P.3d 1100, which involved an arbitration clause and class action waiver similar to the clause and waiver found in DirecTV's Customer Agreement. Cohen, 142 Cal. App. 4th at 1448. The Cohen opinion, quoted a large section of the opinion in Discover Bank, in order to show how the DirecTV Customer Agreement was unconscionable and violates public policy:

> "The class action waiver provision is clearly meant to prevent customers from seeking redress for relatively small amounts of money. Fully aware that few customers will go to the time and trouble of suing in small claims court, the bank has instead sought to create for itself virtual immunity from class or representative actions despite their potential merit, while suffering no similar detriment to its own rights. The clause is not only harsh and unfair to bank customers who might be owed a relatively small sum of money, but it also serves as a disincentive for the bank to avoid the type of conduct that might lead to class action litigation in the first place. By imposing this clause on its customers, the bank has essentially granted itself a license to push the boundaries of good business practices to their furthest limits, fully aware that relatively few, if any, customers will seek legal remedies, and that any remedies obtained will only pertain to that single customer without collateral estoppel effect. This is not only substantively unconscionable, it violates public policy by granting the bank a 'get out of jail free' card while compromising consumer rights. [quotation as set forth in Cohen]. Cohen, 142 Cal. App. 4th at 1448-49 *quoting* Discover Bank, 113 P.3d at 159-60.

Moreover, the court in Cohen quoted several other passages from Discover Bank:

> "When a customer is given an amendment to a customer agreement in the form of a bill stuffer that he would be deemed to accept if he did not close his account, 'an element of procedural unconscionability is present.'" Cohen, 142 Cal. App. 4th at 1450 *quoting* Discover Bank, 113 P.3d at 160.

7

"While adhesive contracts are generally enforced, class action waivers found in those contracts may also be substantively unconscionable 'inasmuch as they may operate effectively as exculpatory contract clauses that are contrary to public policy.'" Cohen, 142 Cal. App. 4th at 1450 *quoting* Discover Bank, 113 P.3d at 160-61.

"Class action waivers are not, in the abstract, exculpatory clauses. However, because damages in consumer cases are often small, and because the wrongful exaction of 'a dollar from each of millions of customers' will result in a handsome profit, the class action is often the only effective way to halt and redress such exploitation." Cohen, 142 Cal. App. 4th at 1450 *quoting* Discover Bank, 113 P.3d at 161.

"Class action waivers are 'indisputably one-sided' as 'credit card companies typically do not sue their customers in class action lawsuits.'" Cohen, 142 Cal. App. 4th at 1450 *quoting* Discover Bank, 113 P.3d at 161.

"Such one-sided, exculpatory contracts in a contract of adhesion, at least to the extent they operate to insulate a party from liability that otherwise would be imposed under California law, are generally unconscionable." Cohen, 142 Cal. App. 4th at 1450 *quoting* Discover Bank, 113 P.3d at 161.

"We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party 'from responsibility for its own fraud, or willful injury to the person or property of another. Under these circumstances, such waivers are unconscionable under California law and should not be enforced." Cohen, 142 Cal. App. 4th at 1450-51 *quoting* Discover Bank, 113 P.3d at 162-63.

The court in Cohen relied so heavily on the decision in Discover Bank since the class action waiver provisions contained in the arbitration clauses in the two cases were so similar and involved facts and issues that were also common to

8

the two cases - large companies who perform fairly low-value services on behalf of many individual customers.  In <u>Cohen</u>, the court noted that "[w]hether a company improperly overcharges its customers $29, or noticeably reduces its customers' television image quality by a like amount in relation to the quality for which they have paid, monetary harm occurs." <u>Cohen</u>, 142 Cal. App. 4th at 1453. Moreover, the court found that

> "[I]n every case, whether sooner or later, the scheme becomes apparent to the consumer, whether it is the appearance on an invoice of an improper charge or the appearance on the television of an inferior image.  In either case, the customer is being deliberately cheated, because he is either paying for something he has not agreed to pay for (the $29 late fee in <u>Discover Bank</u>) or paying for something his is not receiving (image clarity from DirecTV).  In other words, a deliberate practice that deprives consumers of money or services is no less deserving of opprobrium simply because it may be more readily detectable by the consumer. The wrongdoer still profits, albeit perhaps for a shorter time, and the consumer still loses "individually small sums of money." <u>Id</u>.

The DirecTV Customer Agreement, as described by the court in <u>Cohen</u>, "necessarily occur[s] in a setting in which disputes between the contracting parties predictably involve small amounts of damages." <u>Id</u>. at 1452.  The fee at issue in <u>Cohen</u> was $10.99 per month. <u>Id</u>.  While the fact that the <u>Cohen</u> plaintiff sought more than $1,000.00 in damages in his complaint against DirecTV was not an "insignificant sum," according to the court, "many consumers of services such as those offered by DirecTV may not view that amount as sufficient to warrant individual litigation and certainly it is not sufficient to obtain legal assistance in prosecuting the claim." <u>Id</u>.  Therefore, the <u>Cohen</u> court found that "the class action device remains, in our view, the only practicable way for consumers of services such as DirecTV's to deter and redress wrongdoing of the type <u>Cohen</u>

9

alleges. Damages that may or may not exceed $1,000 do not take DirecTV's class action waiver outside a setting in which disputes between the contracting parties predictably involve small amounts of damages." Id. In a footnote to the Cohen opinion, the court observed that "Cohen's actual damages may or may not exceed $1,000. His complaint alleges that only five of the channels he received were affected, and the effect of those channels was a 33 percent reduction in image quality. It is thus not inconceivable that his damages could constitute some fractional amount of his total outlay of funds." Id. at 1452, n.11.

## C. In the instant case, the DirecTV Customer Agreement at issue is unconscionable.

In the instant case, the DirecTV Customer Agreement at issue is unconscionable. The Customer Agreement at issue is exactly the same as in Cohen. The Customer Agreement was a contract of adhesion that DirecTV customers are deemed to accept if they do not close their account. Therefore an element of procedural unconscionability is present. See Cohen, 142 Cal. App. 4th at 1450. The amount in controversy, per prospective plaintiff, is, at best, actual damages of $1,851.43 trebled to $5,554.29. See Complaint at "Wherefore" clauses. It would be extremely difficult for any prospective plaintiff to obtain the services of an attorney to prosecute a case where the actual damages were as small as $1,851.43. Therefore, the only efficient course of action is to allow the consolidation of claims in a class action. It is undisputed that DirecTV is of vastly superior bargaining power compared to any individual plaintiff. Thus, any individual plaintiff is effectively powerless to seek compensation from DirecTV related to the defective HR20's. Finally, the Customer Agreement effectively

10

insulates DirecTV from liability related to the defective HR20's since no individual plaintiff would have the incentive to obtain legal counsel to seek compensation for such a small amount of money in dispute.

## II. THE DIRECTV CUSTOMER AGREEMENT STATES THAT IF THE CLASS ACTION WAIVER PROVISION IS STRICKEN, THEN THE ENTIRE ARBITRATION CLAUSE IS UNENFORCEABLE. THUS, PLAINTIFF SZYMKOWICZ'S SUIT IN THE DISTRICT OF COLUMBIA SUPERIOR COURT IS PROPER.

The DirecTV Customer Agreement states that if the class action waiver provision is stricken, then the entire arbitration clause is unenforceable. Thus, Plaintiff Szymkowicz's suit in the District of Columbia Superior Court is proper. The DirecTV Customer Agreement states that "If, however, the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable." Therefore, since the class action waiver provision in the DirecTV Customer Agreement is unconscionable, the entire arbitration clause is unenforceable. Thus, Plaintiff Szymkowicz's suit in the Superior Court is proper.

### Conclusion

Representative Plaintiff J.P. Szymkowicz, on his own behalf and on behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as "DirecTV Plus HD DVR"), for the foregoing reasons, respectfully requests this Honorable Court enter an Order finding that:

a.   the DirecTV Customer Agreement at issue in the instant litigation is a contract of adhesion in a consumer context;

11

b.   the class action waiver in the DirecTV Customer Agreement is "indisputably one-sided;"

c.   the sums involved in the instant proposed class action are "sufficiently small that the class action is likely the only effective way to redress conduct that deprives DirecTV's customers" of the full benefit of the HR20 Digital Video Recorder's functionalities;

d.   "because DirecTV's prohibition on class claims in arbitration effectively operates to insulate DirecTV from liability for its conduct, the class action waiver is unconscionable and unenforceable;" and

e.   Because DirecTV's Customer Agreement states that "[i]f the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable," Plaintiff Szymkowicz is under no obligation to submit his claims against DirecTV to arbitration and thus, Plaintiff Szymkowicz's claims are properly brought in this Honorable Court; and

f.   Directing any other relief the Court deems proper.

### Oral Hearing Requested

Representative Plaintiff Szymkowicz respectfully requests that this Honorable Court receive oral argument on the instant motion.


Respectfully submitted,

John T. Szymkowicz (#946079)
1220 19th Street, N.W., Suite 400
Washington, DC 20036-2438
(202) 862-8500

Attorney for Plaintiff J.P. Szymkowicz


12

## Certificate of Service

I hereby certify that a copy of the instant motion for declaratory judgment will be delivered to Defendant DirecTV, Inc. along with the summons and complaint by a private process server (who will note such delivery in the Affidavit of Service).

John T. Szymkowicz (#946079)

13

IN THE DISTRICT OF COLUMBIA SUPERIOR COURT
Civil Division

J.P. SZYMKOWICZ            )
                           )
       Representative Plaintiff,    )
                           )        Case Number: CA-2007-690-B
vs.                        )
                           )        Judge Judith Bartnoff
DIRECTV, INC.              )
                           )
       Defendant.          )

## ORDER GRANTING PLAINTIFF SZYMKOWICZ'S MOTION FOR DECLARATORY JUDGMENT ON THE ISSUE OF THE UNCONSCIONABILITY OF THE CLASS ACTION WAIVER AND THE RESULTING UNENFORCEABILITY OF THE ARBITRATION CLAUSE

Upon consideration of Plaintiff J.P. Szymkowicz's Motion for Declaratory Judgment on the Issue of the Unconscionability of the Class Action Waiver and the Resulting Unenforceability of the Arbitration Clause and any Response thereto, IT IS HEREBY ORDERED THAT the Motion is GRANTED. The Court further finds that:

    a.    the DirecTV Customer Agreement at issue in the instant litigation is a contract of adhesion in a consumer context;

    b.    the class action waiver in the DirecTV Customer Agreement is "indisputably one-sided;"

    c.    the sums involved in the instant proposed class action are "sufficiently small that the class action is likely the only effective way to redress conduct that deprives DirecTV's customers" of the full benefit of the HR20 Digital Video Recorder's functionalities;

    d.    "because DirecTV's prohibition on class claims in arbitration effectively operates to insulate DirecTV from liability for its conduct, the class action waiver is unconscionable and unenforceable;" and

e.  Because DirecTV's Customer Agreement states that "[i]f the law of your state would find this agreement to dispense with class arbitration procedures unenforceable, then this entire Section 9 is unenforceable," Plaintiff Szymkowicz is under no obligation to submit his claims against DirecTV to arbitration and thus, Plaintiff Szymkowicz's claims are properly brought in this Honorable Court.

_____                    _____
Date                                        Judge Judith Bartnoff

cc:

John T. Szymkowicz, Esquire
1220 19th Street, N.W., Suite 400
Washington, DC  20036-2438
(202) 862-8500 (voice)
(202) 862-9825 (fax)
john@szymlaw.com

    Attorney for Plaintiff J.P. Szymkowicz


DirecTV, Inc.
2230 East Imperial Highway
El Segundo, California  90245

    Defendant

Support: (877) 433-4533



**CaseFileXpress**
secure legal efiling



Your Account | Submit a Filing | Review Filings / eService | Jurisdictions | Filing Reports | eService Profile | Sign Out

# 🖼 Submit a Filing

✔️ Your submission was successful! Your trace number is **ED301J020012927**. The details of your filing are shown below. To view a printable version of your filing summary, **click here**.

To view the status of this and other submissions, click the "Review Filings" tab above.

**Submit another filing**

**Timestamp:**
03/06/2007 5:31:41 PM (Eastern (U.S. and Canada))

**This is not your official receipt. Your receipt may be viewed in Review Filings after your Filing Status changes to "Confirmation".**

| Description of Fee | Amount |
|---|---|
| eFiling Processing Fees | $10.79 |
| Court Filing Fees | $20.00 |
| CaseFileXpress eService Fee | $1.00 |
| CaseFileXpress Filing Fee | $4.00 |
| **Total cost of filing:** | **$35.79** |

| Personal Information | Payment Information |
|---|---|

**Personal Information**

**Filer:** marine371
**Attorney of Record:** marine371
**Name:** JOHN SZYMKOWICZ
**Law Firm or Organization:** SZYMKOWICZ & SZYMKOWICZ, LLP
**Bar Number:** 946079
**Filer Position:** Attorney
**Address:** 1220 19TH ST NW STE 400
WASHINGTON, DC 20036
**Phone:** (202) 862-8500
**Fax:** (202) 862-9825
**Email:** john@szymkowicz.com

**Payment Information**

**Payment Method:** Credit Card
**Address:** 1220 19TH ST NW
WASHINGTON, DC 20036
**Credit Card Type:** AMEX
**Credit Card #:** XXXX XXXX XXXX 2008
**Cardholder Name:** J.P. SZYMKOWICZ

| Filing Information | Document Information |
|---|---|

**Filing Information**

**Case Title:** Szymkowicz v. DirecTV, Inc.
**Sealed Case:** No
**County Name:** D.C. Superior Court
**Court Type:** District
**Court Name:** D.C. Superior Court

**Document Information**

**File Name:** directvdeclar.pdf

**Cause/Case Number:** 2007 CA 000690 B

**Document Type:** Motion for Judgment

**Plaintiff Attorney(s):**

JOHN SZYMKOWICZ

**Special Instructions:** This is a Motion for Declaratory Judgment on the Issue of the Applicability of the Class Action Waiver and the Resulting Unenforceability of the Arbitration Clause

**Client Matter #:** 0001

Copyright 2003,2004, CaseFileXpress, Inc. All rights reserved.

IN THE DISTRICT OF COLUMBIA SUPERIOR COURT
Civil Division

J.P. SZYMKOWICZ     )
           )
  Representative Plaintiff,  )
           )  Case Number: <u>CA-2007-690-B</u>
vs.         )
           )  Judge Judith Bartnoff
DIRECTV, INC.     )
           )
  Defendant.     )

## MOTION FOR CLASS ACTION CERTIFICATION

### Oral Hearing Requested

Pursuant to D.C. Civil Rules 23 and 23-I, Representative Plaintiff J.P. Szymkowicz, by and through his attorney, John T. Szymkowicz, on his own behalf and on behalf of a class consisting of all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as "DirecTV Plus HD DVR"), for the following reasons, respectfully requests this Honorable Court enter an Order:

 a. finding that the instant action is to be maintained as a class action pursuant to D.C. Civil Rule 23 (c) (1);

 b. defining the class as "all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as 'DirecTV Plus HD DVR');"

 c. appointing Plaintiff J.P. Szymkowicz as the representative of all class members;

 d. appointing Attorney John T. Szymkowicz as counsel to the class;

 e. directing Defendant DirecTV to include a "bill stuffer" containing notice of the instant action and "opt-out"

provision along with each class member's regular monthly
DirecTV bill; and

f.      Directing any other relief the Court deems proper.

## Statement of Facts That Prove that the Instant Action
## Meets the Requirements for a Class Action

1.      Pursuant to D.C. Civil Rule 23 and 23-I, Plaintiff Szymkowicz seeks

certification under Rule 23 (c) (1) that the case be maintained as a class action

with the claims alleged by Plaintiff Szymkowicz as Representative Plaintiff.

2.      The class that Plaintiff Szymkowicz seeks to represent is defined as all

DirecTV customers who subscribe to DirecTV's Digital Video Recording service

and who receive this service via the DirectTV HR20 (also known as "DirecTV

Plus HD DVR").

3.      Plaintiff Szymkowicz does not know at this time how many such potential

class members there are, but does know from reading media accounts of the

introduction of the HR20, speaking to DirecTV employees about the HR20 and

reading postings on DirecTV website's "Technical Help Forum" section entitled

"High Definition Digital Video Recording (HD DVR's)"[1] that there are more than

several thousand such individuals, possibly more than several hundred thousand

such individuals (considering that there are 15.1 million total DirecTV

customers).

---

[1]      This website may be accessed at http://forums.directv.com/pe/action/
forums/defaultview?msgBoardID=10156613. See also DirecTV's 2005 Annual
Report, Pages 2-3.

4.    Plaintiff Szymkowicz believes that many, if not most or even all of these potential class members, have had the same problems with the HR20 that Plaintiff Szymkowicz has had (and has previously described in the instant Complaint).

5.    Therefore, the class is so numerous that joinder of all members is impracticable pursuant to D.C. Civil Rule 23 (a) (1).

6.    There are questions of law and fact common to the class pursuant to D.C. Civil Rule 23 (a) (2), including;

      a.    Does the HR20 fail to perform as advertised?;

      b.    If the HR20 did fail to perform as advertised, what remedy (including monetary damages) is appropriate to compensate each class member?;

      c.    Is DirecTV's attempt to dispense with class action procedures unconscionable?

7.    Plaintiff Szymkowicz's claims are typical of the claims or defenses of the class pursuant to D.C. Civil Rule 23 (a) (3) since he has the same product as the other potential class members (the HR20), is subject to the same terms and conditions of DirecTV service to which other potential class members are subject, and has suffered the same technical problems with the HR20 as the other potential class members.

8.    Plaintiff Szymkowicz and his attorneys will fairly and adequately protect the interests of the class pursuant to D.C. Civil Rule 23 (a) (4) since both Plaintiff Szymkowicz and his counsel, John T. Szymkowicz, are attorneys with extensive experience in litigating complex and high-profile cases including the BCCI bank

3

collapse[2], the ValuJet airplane disaster in the Florida Everglades[3], the ban on pedestrian access at FedExField[4] and the illegal kidnapping of Russian businessman Alexandre Konanykhine and his wife by officials of the United States Immigration and Customs Enforcement Service[5].

9.     The prosecution of separate actions by individual members of the class would create a risk of:

   a.     Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class pursuant to D.C. Civil Rule 23 (b) (1) (A), or

   b.     Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests pursuant to D.C. Civil Rule 23 (b) (1) (B).

10.     DirecTV, Inc. has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole pursuant to D.C. Civil Rule 23 (b) (2).

---

[2]     First American Corporation v. Al-Nahyan, Case Number 93-1309, U.S. District Court for the District of Columbia.

[3]     Panahi v. ValuJet Airlines, 97-VS-0131962J (Superior Court of Fulton County, Georgia).

[4]     In Re: Feltman, Appeal Number AA-1576, Prince George's County Board of Administrative Appeals.

[5]     Konanykhine v. Carroll, Case Number 97-449-A, U.S. District Court for the Eastern District of Virginia, Alexandria Division.

4

11.    As previously described, there are questions of law and fact common to the members of the class that predominate over any questions affecting only individual members pursuant to D.C. Civil Rule 23 (b) (3).

12.    The class action is superior to other available methods for the fair and efficient adjudication of the controversy pursuant to D.C. Civil Rule 23 (b) (3) since there are many potential class plaintiffs with similar problems with the HR20's performance as Plaintiff Szymkowicz has, and therefore, since the amounts in controversy in each potential class plaintiffs' case is relatively small from a monetary point of view, the most efficient way of disposing of these claims is through a class action.

13.    Plaintiff Szymkowicz does not believe that any class member has an interest in individually controlling the prosecution of separate actions pursuant to D.C. Civil Rule 23 (b) (3) (A) since the amounts in controversy in each potential class plaintiffs' case is relatively small from a monetary point of view.

14.    Plaintiff Szymkowicz does not believe that any class member has filed any action concerning the facts at issue in this controversy pursuant to D.C. Civil Rule 23 (b) (3) (B).

15.    Plaintiff Szymkowicz believes that it is desirable to concentrate this litigation in the District of Columbia Superior Court pursuant to D.C. Civil Rule 23 (b) (3) (C) since the District of Columbia is easily accessible via airplane from anywhere in the United States and because the Civil Rules of the District of Columbia Superior Court are based on the Federal Rules of Civil Procedure.

5

16.    Plaintiff Szymkowicz does not believe that there will be any unusual difficulties that are likely to be encountered in the management of this class action pursuant to D.C. Civil Rule 23 (b) (3) (D).

## Notice to Class Members

17.    Plaintiff Szymkowicz requests that this Honorable Court enter an Order directing Defendant DirecTV to include a "bill stuffer" containing notice of the instant action and "opt-out" provision along with each class member's regular monthly DirecTV bill.

18.    For those DirecTV customers who receive their monthly bill via email, Plaintiff Szymkowicz requests that this Honorable Court enter an Order directing Defendant DirecTV to append the notice of the instant action and "opt-out" provision to each class member's regular monthly DirecTV emailed bill.

19.    Such notice to DirecTV customers is the "best notice practicable under the circumstances" pursuant to D.C. Civil Rule 23 (c) (2) since it is the best possible notice to each class member.

20.    Plaintiff Szymkowicz is willing to pay the reasonable costs of such notice as determined by this Honorable Court.

## Conclusion

Representative Plaintiff J.P. Szymkowicz respectfully requests this Honorable Court enter an Order:

a.    finding that the instant action is to be maintained as a class action pursuant to D.C. Civil Rule 23 (c) (1);

b.    defining the class as "all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who

6

receive this service via the DirecTV HR20 (also known as 'DirecTV Plus HD DVR');"

c.    appointing Plaintiff J.P. Szymkowicz as the representative of all class members;

d.    appointing Attorney John T. Szymkowicz as counsel to the class;

e.    directing Defendant DirecTV to include a "bill stuffer" containing notice of the instant action and "opt-out" provision along with each class member's regular monthly DirecTV bill; and

f.    Directing any other relief the Court deems proper.

## Oral Hearing Requested

Representative Plaintiff Szymkowicz respectfully requests that this Honorable Court receive oral argument on the instant motion.

Respectfully submitted,

John T. Szymkowicz (#946079)
1220 19th Street, N.W., Suite 400
Washington, DC 20036-2438
(202) 862-8500

Attorney for Plaintiff J.P. Szymkowicz

## Certificate of Service

I hereby certify that a copy of the instant motion for class certification will be delivered to Defendant DirecTV, Inc. along with the summons and complaint by a private process server (who will note such delivery in the Affidavit of Service).

John T. Szymkowicz (#946079)

7

IN THE DISTRICT OF COLUMBIA SUPERIOR COURT
Civil Division

| | | |
|---|---|---|
| J.P. SZYMKOWICZ | ) | |
| | ) | |
| Representative Plaintiff, | ) | |
| | ) | Case Number:  CA-2007-690-B |
| vs. | ) | |
| | ) | Judge Judith Bartnoff |
| DIRECTV, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING PLAINTIFF SZYMKOWICZ'S MOTION FOR CLASS CERTIFICATION

Upon consideration of Plaintiff J.P. Szymkowicz's Motion for Class Certification and any Response thereto, IT IS HEREBY ORDERED THAT the Motion is GRANTED. The Court further Orders that:

a. that the instant action is to be maintained as a class action pursuant to D.C. Civil Rule 23 (c) (1);

b. the class is defined as "all DirecTV customers who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirecTV HR20 (also known as 'DirecTV Plus HD DVR');"

c. Plaintiff J.P. Szymkowicz is appointed as the representative of all class members;

d. Attorney John T. Szymkowicz is appointed as counsel to the class; and

e. Defendant DirecTV is directed to include a "bill stuffer" containing notice of the instant action and "opt-out" provision along with each class member's regular monthly DirecTV bill.

_____          _____
Date                                                          Judge Judith Bartnoff

cc:

John T. Szymkowicz, Esquire
1220 19th Street, N.W., Suite 400
Washington, DC 20036-2438
(202) 862-8500 (voice)
(202) 862-9825 (fax)
john@szymlaw.com

      Attorney for Plaintiff J.P. Szymkowicz

DirecTV, Inc.
2230 East Imperial Highway
El Segundo, California 90245

      Defendant

Support: (877) 433-4533





**CaseFileXpress**
secure legal efiling

Your Account  |  Submit a Filing  |  Review Filings / eService  |  Jurisdictions  |  Filing Reports  |  eService Profile  |  Sign Out

# ↪ Submit a Filing

✔  Your submission was successful! Your trace number is **ED301J020012929**. The details of your filing are shown below. To view a printable version of your filing summary, **click here**.

To view the status of this and other submissions, click the "Review Filings" tab above.

**Submit another filing**

Timestamp:
03/06/2007 5:33:36 PM (Eastern (U.S. and Canada))

**This is not your official receipt. Your receipt may be viewed in Review Filings after your Filing Status changes to "Confirmation".**

| Description of Fee | Amount |
|---|---|
| eFiling Processing Fees | $10.79 |
| Court Filing Fees | $20.00 |
| CaseFileXpress eService Fee | $1.00 |
| CaseFileXpress Filing Fee | $4.00 |
| **Total cost of filing:** | **$35.79** |

| Personal Information | Payment Information |
|---|---|
| **Filer:** marine371 | **Payment Method:** Credit Card |
| **Attorney of Record:** marine371 | **Address:** 1220 19TH ST NW |
| **Name:** JOHN SZYMKOWICZ | WASHINGTON, DC 20036 |
| **Law Firm or Organization:** SZYMKOWICZ & SZYMKOWICZ, LLP | **Credit Card Type:** AMEX |
| **Bar Number:** 946079 | **Credit Card #:** XXXX XXXX XXXX 2008 |
| **Filer Position:** Attorney | **Cardholder Name:** J.P. SZYMKOWICZ |
| **Address:** 1220 19TH ST NW STE 400 WASHINGTON, DC 20036 | |
| **Phone:** (202) 862-8500 | |
| **Fax:** (202) 862-9825 | |
| **Email:** john@szymkowicz.com | |

| Filing Information | Document Information |
|---|---|
| **Case Title:** Szymkowicz v. DirecTV, Inc. | **File Name:** directvclass.pdf |
| **Sealed Case:** No | |
| **County Name:** D.C. Superior Court | |
| **Court Type:** District | |
| **Court Name:** D.C. Superior Court | |

03/06/2007 05:33 PM

**Cause/Case Number:** 2007 CA 000690 B
   **Document Type:** Motion to Certify as Class Action Filed
**Plaintiff Attorney(s):**
      JOHN SZYMKOWICZ
**Special Instructions:**
      **Client Matter #:** 0001

Copyright 2003,2004, CaseFileXpress, Inc. All rights reserved.





# FLAT RAT
**FLAT RATE POSTAGE F**
**DOMESTIC USE ONL\**

## FOR PICKUP (

CERTIFIED MAIL

7005 1160 0005 2596 0843

U.S. POSTAGE
PAID
WASHINGTON DC
20036
MAR 07, 07
AMOUNT
**$8.30**
00059156-01

UNITED STATES
POSTAL SERVICE
0000    20005

---

NITED STATES POSTAL SERVICE ®                                   www.usps.com

---

## IOW TO USE:



**1. COMPLETE ADDRESS LABEL AREA**
Type or print required return
address and addressee information
In customer block (white area)
or on label (If provided).



**2. PAYMENT METHOD**
Affix postage or meter strip to
indicated in upper right hand



**3. ATTACH LABEL (If provided**
Remove label backing and a
over customer address block
(white area).

Szymkowicz & Szymkowicz, LLP
1220 19th Street NW
Suite 400
Washington, DC 20036-2438



RETURN RECEIPT
REQUESTED


PRIORITY MAIL
UNITED STATES POSTAL SERVICE TM
LABEL 107R, OCT 1997
www.usps.gov

CORPORATION SERVICE COMPANY
ON BEHALF OF DIRECTV, INC.
1090 VERMONT AVE NW
WASHINGTON DC 20005-4905

14F FEBRUARY 2002 USPS  ALL RIGHTS RESERVED

▲ PLACE LABEL HERE ▲

**I (a) PLAINTIFFS**

**DEFENDANTS**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ATTORNEYS (IF KNOWN)

---

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government
  Plaintiff
- 2 U.S. Government
  Defendant
- 3 Federal Question
  (U.S. Government Not a Party)
- 4 Diversity
  (Indicate Citizenship of
  Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT

**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

| **A.** *Antitrust* | **B.** *Personal Injury/ Malpractice* | **C.** *Administrative Agency Review* | **D.** *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| 410 Antitrust | 310 Airplane<br>315 Airplane Product Liability<br>320 Assault, Libel & Slander<br>330 Federal Employers Liability<br>340 Marine<br>345 Marine Product Liability<br>350 Motor Vehicle<br>355 Motor Vehicle Product Liability<br>360 Other Personal Injury<br>362 Medical Malpractice<br>365 Product Liability<br>368 Asbestos Product Liability | 151 Medicare Act<br><br>**Social Security:**<br>861 HIA ((1395ff)<br>862 Black Lung (923)<br>863 DIWC/DIWW (405(g)<br>864 SSID Title XVI<br>865 RSI (405(g)<br>**Other Statutes**<br>891 Agricultural Acts<br>892 Economic Stabilization Act<br>893 Environmental Matters<br>894 Energy Allocation Act<br>890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| **E.** *General Civil (Other)* | **OR** | **F.** *Pro Se General Civil* | |
|---|---|---|---|
| **Real Property**<br>210 Land Condemnation<br>220 Foreclosure<br>230 Rent, Lease & Ejectment<br>240 Torts to Land<br>245 Tort Product Liability<br>290 All Other Real Property<br><br>**Personal Property**<br>370 Other Fraud<br>371 Truth in Lending<br>380 Other Personal Property Damage<br>385 Property Damage Product Liability | **Bankruptcy**<br>422 Appeal 28 USC 158<br>423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>535 Death Penalty<br>540 Mandamus & Other<br>550 Civil Rights<br>555 Prison Condition<br><br>**Property Rights**<br>820 Copyrights<br>830 Patent<br>840 Trademark<br><br>**Federal Tax Suits**<br>870 Taxes (US plaintiff or defendant<br>871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>610 Agriculture<br>620 Other Food &Drug<br>625 Drug Related Seizure of Property 21 USC 881<br>630 Liquor Laws<br>640 RR & Truck<br>650 Airline Regs<br>660 Occupational Safety/Health<br>690 Other<br><br>**Other Statutes**<br>400 State Reapportionment<br>430 Banks & Banking<br>450 Commerce/ICC Rates/etc.<br>460 Deportation | 470 Racketeer Influenced & Corrupt Organizations<br>480 Consumer Credit<br>490 Cable/Satellite TV<br>810 Selective Service<br>850 Securities/Commodities/ Exchange<br>875 Customer Challenge 12 USC 3410<br>900 Appeal of fee determination under equal access to Justice<br>950 Constitutionality of State Statutes<br>890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| **G.** *Habeas Corpus/ 2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| **530 Habeas Corpus-General**<br>**510 Motion/Vacate Sentence** | **442 Civil Rights-Employment**<br>**(criteria: race, gender/sex,**<br>**national origin,**<br>**discrimination, disability**<br>**age, religion, retaliation)**<br><br>*(If pro se, select this deck)* | **895 Freedom of Information Act**<br>**890 Other Statutory Actions**<br>**(if Privacy Act)**<br><br>*(If pro se, select this deck)* | **152 Recovery of Defaulted**<br>**Student Loans**<br>**(excluding veterans)** |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| **710 Fair Labor Standards Act**<br>**720 Labor/Mgmt. Relations**<br>**730 Labor/Mgmt. Reporting &**<br>**Disclosure Act**<br>**740 Labor Railway Act**<br>**790 Other Labor Litigation**<br>**791 Empl. Ret. Inc. Security Act** | **441 Voting (if not Voting Rights**<br>**Act)**<br>**443 Housing/Accommodations**<br>**444 Welfare**<br>**440 Other Civil Rights**<br>**445 American w/Disabilities-**<br>**Employment**<br>**446 Americans w/Disabilities-**<br>**Other** | **110 Insurance**<br>**120 Marine**<br>**130 Miller Act**<br>**140 Negotiable Instrument**<br>**150 Recovery of Overpayment &**<br>**Enforcement of Judgment**<br>**153 Recovery of Overpayment of**<br>**Veteran's Benefits**<br>**160 Stockholder's Suits**<br>**190 Other Contracts**<br>**195 Contract Product Liability**<br>**196 Franchise** | **441 Civil Rights-Voting**<br>**(if Voting Rights Act)** |

## V. ORIGIN

| 1 Original Proceeding | 2 Removed from State Court | 3 Remanded from Appellate Court | 4 Reinstated or Reopened | 5 Transferred from another district (specify) | 6 Multi district Litigation | 7 Appeal to District Judge from Mag. Judge |
|---|---|---|---|---|---|---|

---

### VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

---

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 | **DEMAND $**<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>**YES**        **NO** |
|---|---|---|---|

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | **YES** | **NO** | If yes, please complete related case form. |
|---|---|---|---|---|

**DATE**                    **SIGNATURE OF ATTORNEY OF RECORD**

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    **I.**        COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT  (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    **III.**    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section **II**.

    **IV.**    CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

    **VI.**    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    **VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.