# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

J. P. SZYMKOWICZ,                          )
                                           )
            Plaintiff,                     )
                                           )
    vs.                                    )    CIVIL ACTION NUMBER: 1:07-CV-00581
                                           )
DIRECTV, INC.,                             )    The Honorable Paul L. Friedman
                                           )
            Defendant.                     )
                                           )
                                           )
_____   )

## DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION AND TO COMPEL ARBITRATION

Defendant DIRECTV, Inc. moves, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA") for an order dismissing or staying this action and compelling arbitration of Plaintiff's claims.  Plaintiff Szymkowicz has agreed contractually to resolve all disputes with DIRECTV through binding arbitration, and pursuant to the FAA, 9 U.S.C. § 4, this Court should compel him to do so.

Pursuant to Section 3 of the FAA, this Court must stay -- and has discretion to dismiss -- these proceedings pending the results of the parties' binding arbitration.  DIRECTV bases this motion on the concurrently filed Statement of Points and Authorities, the Affidavits of Michael Johnson and David Horowitz and accompanying exhibits, the complete file in this case, and such additional material or argument as may be considered by the Court.

DIRECTV requests oral argument on this motion.


Dated:  April 2, 2007

Respectfully submitted by,

KIRKLAND & ELLIS LLP


_____/s/ Marimichael O. Skubel_____
Marimichael O. Skubel (D.C. Bar No. 294934)
mskubel@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005-5793
Tel:  (202) 879-5000
Fax:  (202) 879-5200

Michael E. Baumann (D.C. Bar No. 339028)
mbaumann@kirkland.com
Melissa D. Ingalls (D.C. Bar No. 501060)
mingalls@kirkland.com
KIRKLAND & ELLIS LLP
777 S. Figueroa Street, 37th Floor
Los Angeles, California  90017
Tel.: (213) 680-8400
Fax.: (213) 680-8500

Attorneys for Defendant DIRECTV, INC.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

J. P. SZYMKOWICZ,            )

           Plaintiff,        )

      vs.               )    CIVIL ACTION NUMBER: 1:07-CV-00581

DIRECTV, INC.,           )    The Honorable Paul L. Friedman

           Defendant.   )

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION AND TO COMPEL ARBITRATION

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................................1

II.     BACKGROUND ..............................................................................................................1

III.    THIS COURT SHOULD COMPEL ARBITRATION OF SZYMKOWICZ'S
        CLAIMS IN ACCORDANCE WITH THE PARTIES' ARBITRATION
        AGREEMENT. ................................................................................................................4

        A.      The Customer Agreement Between DIRECTV And Szymkowicz Contains
                An Arbitration Clause. ...........................................................................................5

        B.      Szymkowicz's Claims Against DIRECTV Are Covered By The
                Arbitration Provision. ............................................................................................6

        C.      The Arbitration Clause Is Binding And Enforceable...............................................6

                1.      The arbitration provision is not procedurally unconscionable....................7

                2.      The arbitration provision is not substantively unconscionable under
                        D.C. law. ....................................................................................................8

                3.      If necessary, this Court should look to Maryland law for guidance
                        on whether the parties' waiver of class arbitration procedures is
                        unconscionable............................................................................................9

IV.     CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alford v. Dean Witter Reynolds, Inc.*,
975 F.2d 1161 (5th Cir. 1992) ...................................................................... 4

*\*Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*,
2006 WL 1793295 (D.D.C. June 28, 2006) ................................................... 4

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) ...................................................................................... 9

*AT&T Techs. Inc. v. Comm. Workers of Am.*,
475 U.S. 643 (1986) ...................................................................................... 6

*Boomer v. AT&T Corp.*,
309 F.3d 404 (7th Cir. 2002) ........................................................................ 5

*Carnival Cruise Lines v. Shute*,
499 U.S. 585 (1991) ...................................................................................... 5

*Conseco Indus., Ltd. v. Conforti & Eisele, Inc.*,
627 F.2d 312 (D.C. Cir. 1980) ...................................................................... 9

*\*Doyle v. Finance Am., LLC*,
__ A.2d __, 2007 WL 765211 (Md. Ct. Spec. App. March 15, 2007) ............ 10

*Emeronye v. CACI Int'l, Inc.*,
141 F. Supp. 2d 82 (D.D.C. 2001) ................................................................ 4

*\*Forrest v. Verizon Comms., Inc.*,
805 A.2d 1007 (D.C. 2002) .......................................................................... 8

*Gilman v. Wheat, First Secs., Inc.*,
692 A.2d 454 (Md. 1997) .............................................................................. 10

*Hill v. Gateway 2000, Inc.*,
105 F.3d 1147 (7th Cir. 1997) ...................................................................... 5

*\*Jones v. Genus Credit Mgmt. Corp.*,
353 F. Supp. 2d 598 (D. Md. 2005) ......................................................... 7, 11

*Metro East Ctr. for Conditioning and Health v. Qwest Comms., Int'l, Inc.*,
294 F.3d 924 (7th Cir. 2002) ........................................................................ 10

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*Morris v. Capitol Furniture & Appliance Co.*,
  280 A.2d 775 (D.C. 1971) ........................................................................ 7

*\*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ............................................................................. 4, 6

*Napoleon v. Heard*,
  455 A.2d 901 (D.C. 1983) ..................................................................... 9

*Nur v. K.F.C. USA, Inc.*,
  142 F. Supp. 2d 48 (D.D.C. 2001) ........................................................ 6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ............................................................................. 4

*Riggs Nat'l Bank of Washington D.C. v. District of Columbia*,
  581 A.2d 1229 (D.C. 1990) .................................................................. 7

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  170 F.3d 1 (1st Cir. 1999) .................................................................... 7

*Scherk v. Alberto-Culver Co.*,
  417 U.S. 506 (1974) ............................................................................. 9

*Sigmund v. Progressive N. Ins. Co.*,
  374 F. Supp. 2d 33 (D.D.C. 2005) ....................................................... 9

*\*Snowden v. CheckPoint Cashing*,
  290 F.3d 631 (4th Cir. 2002) ............................................................... 10

*Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Sys., Inc.*,
  448 F. Supp. 2d 64 (D.D.C. 2006) ....................................................... 6

*\*Walther v. Sovereign Bank*,
  872 A.2d 735 (Md. 2005) ................................................................. 9, 10

*Williams v. Walker-Thomas Furniture Co.*,
  350 F.2d 445  (D.C. Cir. 1965) ............................................................ 7

**Statutes**

9 U.S.C. §§ 1 et seq............................................................................ 1, 4, 7, 10

I.      **INTRODUCTION**

Plaintiff J.P. Szymkowicz, a Washington D.C.-area litigation attorney, has been a DIRECTV subscriber for over six years.  In November and December 2006, Szymkowicz added two new DIRECTV Plus® High-Definition Digital Video Recorder receivers ("HD-DVR" or "HR20 HD-DVR") to his account.  Szymkowicz now subscribes to DIRECTV's High-Definition television (HDTV) services, DVR services, and other various DIRECTV services. Szymkowicz's Complaint, which he purports to bring on behalf of a putative class of all DIRECTV subscribers with the HR20 HD-DVR, alleges that DIRECTV did not provide these subscribers adequate DVR service through their HR20 HD-DVRs.

Szymkowicz, however, cannot pursue his claims in this Court because he has agreed contractually to resolve all disputes with DIRECTV through binding arbitration.  Under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), this Court should respect and enforce the parties' arbitration agreement by dismissing or staying this case and compelling arbitration of Szymkowicz's claims.

II.     **BACKGROUND**

DIRECTV provides digital television services to consumers nationwide.  To obtain these services, a potential DIRECTV subscriber typically purchases or leases, either directly from DIRECTV or a retailer, the equipment necessary to receive DIRECTV's satellite signal.  The potential customer then calls DIRECTV and becomes a subscriber by electing to receive various of DIRECTV's services.  After the equipment is installed, DIRECTV then activates the subscriber's services, and the customer begins to receive programming.  The relationship between DIRECTV and each customer is governed principally by a written contract (the "Customer Agreement") that is available on DIRECTV's website and is mailed to each customer along with his or her first billing statement.  The Customer Agreement sets forth the parties' rights and obligations and explains the terms and conditions of subscribing to DIRECTV services.  *See* Declaration of Michael Johnson ("Johnson Decl.") at ¶ 2, filed concurrently.

Szymkowicz began subscribing to DIRECTV's services on November 16, 2000. DIRECTV mailed Szymkowicz his first billing statement on November 17, 2000, and included with his first statement a copy of the DIRECTV Customer Agreement then in effect. *See id.* ¶ 3, Ex. A (1999 Customer Agreement). The Customer Agreement specified that Szymkowicz accepted its terms by accepting, and not canceling, DIRECTV's services. *Id.*, Ex. A, intro. The Customer Agreement further provided that it could be replaced by subsequent, updated Agreements and that Szymkowicz would accept the terms of any subsequent Agreements in the same manner that he agreed to the terms of the initial Customer Agreement — by continuing to accept DIRECTV services. *Id.*, Ex. A, § 4. Szymkowicz's original Customer Agreement with DIRECTV also contained an arbitration provision. *Id.*, Ex. A, § 8 (Resolving Disputes). After receiving the Customer Agreement, Szymkowicz did not dispute any of its terms or conditions and did not cancel his DIRECTV services.

Over the next few years, Szymkowicz received updated Customer Agreements, as anticipated, in September 2001 and October 2004, along with his September 17, 2001 and October 17, 2004 billing statements. *Id.* ¶ 4, Ex. B (2001 Customer Agreement), and Ex. C (2004 Customer Agreement). Both the 2001 and 2004 Customer Agreements contained arbitration provisions substantially similar to the 1999 Customer Agreement. *Id.*, Ex. B, § 8 ("Resolving Disputes"); Ex. C, § 9 ("Resolving Disputes"). After receiving the 2001 and 2004 Customer Agreements, Szymkowicz did not dispute any of their terms or conditions and did not cancel his DIRECTV services. *Id.* ¶ 4.

In May 2006, Szymkowicz received an updated DIRECTV Customer Agreement, effective May 2006, along with his May 17, 2006 billing statement. *Id.* ¶ 5 and Ex. D. The 2006 Customer Agreement contains substantially the same arbitration provision to which Szymkowicz had previously agreed. *Id.*, Ex. D, § 9 ("Resolving Disputes"). The 2006 Customer Agreement between Szymkowicz and DIRECTV states in bold, capital lettering:

> **THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9).  IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.  IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

*Id.*, Ex. D, intro.  After receiving the 2006 Customer Agreement, Szymkowicz did not dispute its terms or conditions or cancel his DIRECTV services.  *Id.* ¶ 5.  Rather, in November and December 2006, Szymkowicz upgraded his DIRECTV system and services by activating two HR20 HD-DVRs, which gave him the added capability of, among other things, receiving and digitally recording High Definition television programming.  *Id.* ¶ 6.  Szymkowicz's Customer Agreement with DIRECTV provides the terms and conditions under which he subscribes to these services.  *Id.*, Ex. D, *e.g.* § 7 ("DIRECTV® DVR SERVICE").

Szymkowicz remains a DIRECTV subscriber to this day.  *Id.* ¶ 8.  Indeed, Szymkowicz alleges in his Complaint that "[t]he DirecTV Customer Agreement dated May 1, 2006 . . . currently governs the delivery of DirecTV service to its customers, including Plaintiff Szymkowicz . . . ."  Compl. ¶ 68.  Accordingly, the Customer Agreement governs Szymkowicz's ongoing relationship with DIRECTV and his use of DIRECTV's HD DVR services, and requires him to arbitrate his claims against DIRECTV.

On March 28 and March 30, 2007, DIRECTV notified Szymkowicz that it intended to avail itself of the parties' contractual dispute resolution clause and made further attempts to resolve Szymkowicz's claims informally.  *See* Declaration of David I. Horowitz ("Horowitz Decl."), ¶¶ 1-3, filed concurrently.  DIRECTV has already provided Szymkowicz several hundred dollars in credit amounts to compensate him for the issues he has brought to DIRECTV's attention since November 2006.  Johnson Decl. ¶ 7.  Szymkowicz, however, refuses to arbitrate his claims.  Horowitz Decl. ¶ 2.

III.    **THIS COURT SHOULD COMPEL ARBITRATION OF SZYMKOWICZ'S CLAIMS IN ACCORDANCE WITH THE PARTIES' ARBITRATION AGREEMENT.**

Section 3 of the FAA provides that, when a plaintiff sues "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall" stay the action until arbitration has been had in accordance with the terms of the parties' agreement.  *See* 9 U.S.C. § 3.  Although the language of Section 3 refers to staying proceedings, it is "well established" that dismissal of the action is proper when "all issues raised in the complaint must be submitted to arbitration."  *See Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 2006 WL 1793295, *3 (D.D.C. June 28, 2006) (citing *Emeronye v. CACI Int'l, Inc.*, 141 F. Supp. 2d 82, 88 (D.D.C. 2001)); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").  Section 4 of the FAA, in turn, empowers the Court to compel arbitration of a dispute subject to arbitration.  *See* 9 U.S.C. § 4.  Szymkowicz's contract with DIRECTV confirms that its arbitration provision "shall be governed by the Federal Arbitration Act."  Johnson Decl., Ex. D, § 10(b).

In interpreting the FAA, the Supreme Court has held repeatedly that arbitration clauses should be liberally enforced in light of Congress' declaration of a strong public policy favoring arbitration of disputes.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasizing that the FAA is "a congressional declaration of a liberal federal policy favoring arbitration agreements").  In light of this solid preference for arbitration, the FAA limits the role of courts in the arbitration process.  When a contract contains an arbitration clause and the dispute presented in litigation is within the scope of that clause, the Court must stay or dismiss the action pending arbitration.  *See* 9 U.S.C. § 3; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).  Both of these conditions are met in this case.

A.    **The Customer Agreement Between DIRECTV And Szymkowicz Contains An Arbitration Clause.**

There is no question that the contract between Szymkowicz and DIRECTV contains an arbitration clause. The arbitration provision provides that all disputes "relating to" the Agreement or to DIRECTV services not resolved informally are subject to binding arbitration:

> In order to expedite and control the costs of disputes, you and we agree that any legal or equitable claim relating to this Agreement, any addendum, or your Service (referred to as a "Claim") will be resolved as follows:

> [I]f we cannot resolve a Claim informally, any Claim either of us asserts will be resolved only by binding arbitration. The arbitration will be conducted under the rules of JAMS that are in effect at the time the arbitration is initiated . . . and under the rules set forth in this Agreement.

Johnson Decl., Ex. D, § 9.

Szymkowicz accepted the Customer Agreement and its terms, including the arbitration provision, when he accepted DIRECTV's services. *See, e.g., Carnival Cruise Lines v. Shute*, 499 U.S. 585, 593-95 (1991); *Boomer v. AT&T Corp.*, 309 F.3d 404, 414-16 (7th Cir. 2002) (customer's silence and continued use of long-distance service constituted acceptance of contract, including arbitration clause); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148-50 (7th Cir. 1997) (holding that consumers accepted the contract, including its arbitration provision, when they failed to return the product within the time specified for rejection of the agreement). Indeed, not once in the over six-years during which he has received DIRECTV's services has Szymkowicz disputed the arbitration provision or otherwise rejected the Customer Agreement's terms. Johnson Decl. ¶¶ 3-5. As an attorney with purportedly "extensive experience in litigating complex and high-profile cases," Szymkowicz is undoubtedly familiar with arbitration provisions and their consequences. Compl. ¶ 78. Thus, the parties in fact have a contract with an arbitration provision. *See also id.* ¶ 68.

**B.** **Szymkowicz's Claims Against DIRECTV Are Covered By The Arbitration Provision.**

"Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25; *see also Stromberg Sheet Metal Works, Inc. v. Washington Gas Energy Sys., Inc.*, 448 F. Supp. 2d 64, 67 (D.D.C. 2006) ("The FAA creates a strong presumption in favor of enforcing arbitration agreements . . . ."); *Nur v. K.F.C. USA, Inc.*, 142 F. Supp. 2d 48, 50 (D.D.C. 2001) ("Federal courts have recognized a strong policy favoring alternative means of dispute resolution . . . .")

The arbitration clause here is as broad as it gets, extending to "any legal or equitable claim relating to" either the Customer Agreement or DIRECTV's services. Johnson Decl., Ex. D, § 9. When parties have used such expansive phrasing, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs. Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986). Szymkowicz's claims relate to both his DIRECTV services and his Customer Agreement.

For example, Szymkowicz seeks to represent a class of all DIRECTV subscribers "who subscribe to DirecTV's Digital Video Recording service and who receive this service via the DirectTV [sic] HR20", and seeks damages in the form of subscription fees paid to DIRECTV for the DVR service, as well as other services. *See* Compl. ¶ 72, ¶ 60. Additionally, for example, Szymkowicz alleges that DIRECTV breached the parties' agreement "by failing to provide Plaintiff Szymkowicz with working satellite television service, including DVR functionality." *Id.* ¶ 93. All of Szymkowicz's claims relate to DIRECTV's services, and the parties' Customer Agreement. As a result, Szymkowicz's claims fall within the arbitration clause. Thus, both conditions necessary for compelling arbitration exist in this case.

**C.** **The Arbitration Clause Is Binding And Enforceable.**

Once the movant has established the prerequisites to compel arbitration, the burden of showing why the matter should not be arbitrated falls on the party opposing arbitration. 9 U.S.C. § 2 (written arbitration agreements are "valid, irrevocable, and enforceable, save upon grounds as

exist at law or in equity for the revocation of any contract").  Under District of Columbia law, which governs this dispute,[1] a party challenging the validity of a contract on unconscionability grounds has the burden of proving that the agreement is unconscionable.  *See, e.g., Riggs Nat'l Bank of Washington D.C. v. District of Columbia*, 581 A.2d 1229, 1251-52 (D.C. 1990) (plaintiff challenging the validity of a contract on unconscionability grounds must prove the elements of unconscionability); *see also Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir. 1999) (noting that "the law has long imposed a heavy burden on those who" argue the unconscionability of an arbitration agreement); *Jones v. Genus Credit Mgmt. Corp.*, 353 F. Supp. 2d 598, 601 (D. Md. 2005) (plaintiffs have burden of establishing substantive unconscionability of arbitration agreement).  DIRECTV understands that Szymkowicz intends to argue that the arbitration clause is unconscionable because it contains an express waiver of using class procedures in arbitration.  District of Columbia law requires that both procedural and substantive unconscionability exist in order to render a contract clause unenforceable.  Szymkowicz's forthcoming unconscionability arguments fail because neither unconscionability prong exists here.

### 1.    The arbitration provision is not procedurally unconscionable.

To establish procedural unconscionability, a party must show that he had no real choice but to enter into the contract at issue.  *See Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965).  An adhesion contract is not procedurally unconscionable if the consumer, before entering into the contract, could have "indulge[d] in comparative shopping" so as to ensure a meaningful choice.  *See Morris v. Capitol Furniture & Appliance Co.*, 280 A.2d 775, 776 (D.C. 1971).

---

[1]    Section 10(b) of the Customer Agreement provides:

> Applicable Law:  The interpretation and enforcement of this Agreement shall be governed by the rules and regulations of the Federal Communications Commission, other applicable federal laws, and the laws of the state and local areas where Service is provided to you.  This Agreement is subject to modification if required by such laws.  Notwithstanding the foregoing, Section 9 shall be governed by the Federal Arbitration Act.

*See* Johnson Decl., Ex. D, § 10(b).

Here, Szymkowicz could have obtained satellite or cable television services from a provider other than DIRECTV; indeed, for the few months when the HR20 HD-DVR was not yet available to subscribers, Szymkowicz actually did subscribe to cable television service from RCN. *See* Compl. ¶ 29. And if Szymkowicz were not happy with the terms of the arbitration clause, he could have cancelled his DIRECTV service, rejected the Customer Agreement, and signed up with another cable or satellite television service provider. Thus, there is no procedural unconscionability here.

## 2. The arbitration provision is not substantively unconscionable under D.C. law.

The parties' arbitration agreement is not substantively unconscionable merely because it precludes class arbitration. While there are no District of Columbia cases addressing specifically whether a no-class procedures provision is unconscionable in the context of an arbitration agreement, the D.C. Court of Appeals has held, in a similar context, that the unavailability of a class action mechanism does not render a forum selection clause unenforceable. *See Forrest v. Verizon Comms., Inc.*, 805 A.2d 1007, 1012-13 (D.C. 2002).

In *Forrest*, a DSL subscriber brought a putative class action against Verizon in D.C. Superior Court, alleging breach of contract, negligent misrepresentation and violation of Virginia's consumer protection laws. *Id*. at 1009. Verizon moved to dismiss based on a forum selection clause in the customer service agreement providing for exclusive jurisdiction and venue in Virginia. *Id*. The trial court granted the motion to dismiss. *Id*. On appeal, plaintiff contended that enforcement of the forum selection clause would be unreasonable and unconscionable because of his inability to file a class action in Virginia. *Id*. at 1012. Plaintiff argued that because "each person's damages are likely to be so small that the cost of litigating an individual claim in Virginia would exceed the claim's potential value," a class action mechanism was the only viable option for seeking relief from defendant's alleged misconduct. *Id*. Recognizing that plaintiff could "still have his day in court" even without a class action procedure, the Court of

Appeals affirmed the trial court's decision enforcing the forum selection clause. *Id.* at 1012, 1013, n.15

    *Forrest*'s logic extends naturally to this case. Indeed, "[a]n arbitration agreement is a species of forum-selection clause . . . ." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 289 (1995); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate before a specialized tribunal is, in effect, a specialized kind of forum-selection clause . . . ."). Accordingly, under District of Columbia law, when parties agree freely to litigate in a particular forum, whether it be in a particular state or in arbitration, the result is the same: the absence of a class-action mechanism does not render the agreement unconscionable.

        **3.**    **If necessary, this Court should look to Maryland law for guidance on whether the parties' waiver of class arbitration procedures is unconscionable.**

    Szymkowicz suggests in his Complaint that this Court should look to California law to determine whether the class arbitration waiver in the Customer Agreement is unconscionable. But California courts have the "unquestionably minority view" on this issue. *See Walther v. Sovereign Bank*, 872 A.2d 735, 750 (Md. 2005). Instead, if this Court needs guidance, it should look to Maryland law, which is "especially persuasive authority when the District's common law is silent." *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983); *Sigmund v. Progressive N. Ins. Co.*, 374 F. Supp. 2d 33, 36 (D.D.C. 2005) ("If there is no D.C. law on point, 'the District of Columbia courts should look to the law of Maryland for guidance . . . .'") (quoting *Conseco Indus., Ltd. v. Conforti & Eisele, Inc.*, 627 F.2d 312, 316 (D.C. Cir. 1980)). Under Maryland law, the class waiver provision is valid and the parties' arbitration agreement is enforceable.

    *Walther* illustrates Maryland's approach to claims of unconscionability in the arbitration context. There, plaintiffs brought a class action on behalf of persons who obtained secondary mortgage loans from the defendant. Defendant moved to compel arbitration under an arbitration clause contained in plaintiffs' mortgage loan agreement, which required arbitration of "any claim, dispute or controversy arising from or relating to [the] agreement . . . ." *Walther*, 872 A.2d at 739. As here, the contract was governed by the FAA. *Id.* at 742. Plaintiffs argued that

the arbitration clause was unconscionable because, among other things, it made class procedures unavailable in the arbitration. *Id*. at 75. Noting that "[n]umerous courts, both federal and state, have rigorously enforced no-class-action provisions in arbitration agreements . . ." and relying on its prior decision enforcing a Virginia forum-selection clause, the court rejected plaintiffs' argument outright. *Id*. and cases cited therein; *see Gilman v. Wheat, First Secs., Inc.*, 692 A.2d 454, 465 (Md. 1997).

Significantly, the court was unpersuaded by plaintiffs' reliance on a line of California cases finding class action prohibitions in arbitration agreements unconscionable: "We cannot ignore the strong policy, made clear in both federal and Maryland law, that favors the enforcement of arbitration provisions. We believe that the opinions to which petitioners cite that hold otherwise give short shrift to this principle." *Walther*, 872 A.2d at 751 (citing *Metro East Ctr. for Conditioning and Health v. Qwest Comms., Int'l, Inc.*, 294 F.3d 924, 927 (7th Cir. 2002) (arguments based on the costs of arbitration and the preclusion of class actions are "the sort of litany that the Federal Arbitration Act is supposed to silence")). In fact, just two weeks ago, the Maryland Court of Special Appeals affirmed a trial court ruling staying a putative class action and compelling arbitration. *See Doyle v. Finance Am., LLC*, __ A.2d __, 2007 WL 765211 , *10 (Md. Ct. Spec. App. March 15, 2007). Citing *Walther*, the court noted that "[a]lthough a minority of jurisdictions take the position that 'no-class-action' provisions are unenforceable, *Maryland stands firm in the majority*." *Id*. at *3 n.6 (emphasis added).

Federal courts applying Maryland law have also enforced arbitration agreements containing class action waiver provisions. In *Snowden v. CheckPoint Cashing*, 290 F.3d 631, 683 (4th Cir. 2002), the Fourth Circuit held that an arbitration clause in an agreement between a borrower and a deferred deposit check-cashing lender was not unconscionable merely because it contained a provision excluding the arbitration of disputes on a class-action basis, even though the borrower only had a claim for a negligible amount of damages. *Id*. (also "reject[ing] as meritless [plaintiff's] unsupported argument that forcing consumers like her to arbitrate consumer protection claims against companies like [defendant's] is against public policy relating

to consumer protection"). Likewise, in *Jones v. Genus Credit*, 353 F. Supp. 2d at 600, the District of Maryland held that an arbitration clause requiring the plaintiffs to "not participate in any class-action lawsuit in connection with any such dispute" was valid and enforceable. There does not appear to be any Maryland law to the contrary.

Thus, consistent with this guiding authority, the parties' arbitration agreement is valid and enforceable under District of Columbia law.

## IV.    CONCLUSION

Szymkowicz's claims against DIRECTV do not belong in this Court. His Customer Agreement with DIRECTV requires arbitration of all the claims he asserts here. Accordingly, under Sections 3 and 4 of the FAA, DIRECTV respectfully requests that this Court issue an order dismissing or staying this case and compelling arbitration of Szymkowicz's claims.


Dated: April 2, 2007                    Respectfully submitted by,

                                        KIRKLAND & ELLIS LLP


                                        _____/s/ Marimichael O. Skubel_____
                                        Marimichael O. Skubel (D.C. Bar No. 294934)
                                        mskubel@kirkland.com
                                        KIRKLAND & ELLIS LLP
                                        655 Fifteenth Street, N.W.
                                        Washington, D.C.  20005-5793
                                        Tel:  (202) 879-5000
                                        Fax:  (202) 879-5200

                                        Michael E. Baumann (D.C. Bar No. 339028)
                                        mbaumann@kirkland.com
                                        Melissa D. Ingalls (D.C. Bar No. 501060)
                                        mingalls@kirkland.com
                                        KIRKLAND & ELLIS LLP
                                        777 S. Figueroa Street, 37th Floor
                                        Los Angeles, California  90017
                                        Tel.: (213) 680-8400
                                        Fax.: (213) 680-8500

                                        Attorneys for Defendant DIRECTV, INC.

-11-

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| J. P. SZYMKOWICZ, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NUMBER: 1:07-CV-00581 |
| vs. | ) | |
| | ) | The Honorable Paul L. Friedman |
| DIRECTV, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF DAVID I. HOROWITZ IN SUPPORT OF DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION, AND TO COMPEL ARBITRATION

I, David I. Horowitz, declare as follows:

1.    I am an associate with the law firm Kirkland & Ellis LLP, counsel to DIRECTV, Inc. in this matter.  I submit this declaration in support of DIRECTV'S Motion To Dismiss Or Stay Proceedings Pending Arbitration And To Compel Arbitration.  I have personal knowledge of the facts contained in this declaration, and I can testify competently to them if called upon to do so.

2.    On Friday, March 30, 2007, I spoke with John T. Szymkowicz, counsel for and law partner of the plaintiff in this matter, his son J. P. Szymkowicz ("Plaintiff").  I confirmed to Mr. Szymkowicz what my colleague Melissa Ingalls had told him in an email dated March 28, 2007, that DIRECTV intended to avail itself of the parties' contractual dispute resolution provision.  I discussed with Mr. Szymkowicz DIRECTV's intent to move to dismiss or stay this action pending arbitration and to compel arbitration and asked him whether there was any opposition to the relief DIRECTV seeks.  Mr. Szymkowicz informed me that he would oppose the motion.

3.    I also tried to resolve the Plaintiff's claims informally, but without success.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 2, 2007.

David I. Horowitz

1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

J. P. SZYMKOWICZ,                )
                                 )
            Plaintiff,           )
                                 )
                                 )   CIVIL ACTION NUMBER: 1:07-CV-00581
    vs.                          )
                                 )   The Honorable Paul L. Friedman
DIRECTV, INC.,                   )
                                 )
            Defendant.           )
                                 )
                                 )
_____ )

## DECLARATION OF MICHAEL JOHNSON IN SUPPORT OF
## DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS
## PENDING ARBITRATION AND TO COMPEL ARBITRATION

I, Michael Johnson, declare as follows:

1. I am the Vice President of Customer Service at DIRECTV, Inc. in El Segundo, California. In my current position, I am responsible for various aspects of customer service, including communications with customers regarding their current or potential DIRECTV service, billing and technical issues, and the maintenance of customer information. I am also knowledgeable about the written contract that governs DIRECTV's relationship with its customers ("Customer Agreement"), and the process by which customers receive that Customer Agreement. I have worked for DIRECTV for 9 years. The facts contained in this declaration are based on my personal knowledge or my review of corporate records, and I can testify competently to them if called upon to do so.

2. DIRECTV provides digital television services to consumers nationwide. To obtain these services, a potential DIRECTV subscriber typically purchases or leases, either directly from DIRECTV or a retailer, the equipment necessary to receive DIRECTV's satellite signal and elects to receive various of DIRECTV's services. After the equipment is installed, DIRECTV activates the subscriber's services, and the customer begins to receive programming. The relationship between DIRECTV and each customer is governed principally by the Customer Agreement, which is available on DIRECTV's website and is mailed to each customer along with his or her first billing statement. The Customer Agreement sets forth the parties' rights and obligations and explains the terms and conditions of subscribing to DIRECTV services.

3. I have reviewed the billing and customer service records of the Plaintiff in this case, Mr. Szymkovicz. Mr. Szymkowicz first subscribed to DIRECTV's services on November 16, 2000. DIRECTV mailed Mr. Szymkowicz his first billing statement on November 17, 2000, and included with the billing statement a copy of the DIRECTV Customer Agreement then in

effect since 1999, which contained an arbitration provision. A true and correct copy of this Customer Agreement is attached to this declaration as Exhibit A. After receiving the 1999 Customer Agreement, Mr. Szymkowicz neither disputed any of its terms or conditions, nor cancelled his DIRECTV services.

4. Over the next few years, Mr. Szymkowicz received updated Customer Agreements in September 2001 and October 2004, along with his September 17, 2001 and October 17, 2004 billing statements. True and correct copies of the 2001 and 2004 Customer Agreements are attached to this declaration as Exhibits B and C, respectively. Both the 2001 and the 2004 Customer Agreements contained arbitration provisions substantially similar to the 1999 Customer Agreement. After receiving the 2001 and 2004 Customer Agreements, Mr. Szymkowicz neither disputed their terms or conditions, nor cancelled his DIRECTV services.

5. With his May 17, 2006 billing statement, Mr. Szymkowicz received the current version of the DIRECTV Customer Agreement, which also contains a conspicuous arbitration provision. A true and correct copy of the 2006 Customer Agreement is attached to this declaration as Exhibit D. Again, after receiving the 2006 Customer Agreement, Mr. Szymkowicz did not dispute its terms or conditions or cancel his DIRECTV services.

6. Rather, in November and December 2006, Mr. Szymkowicz upgraded his DIRECTV system and services by activating two HR20 High-Definition Digital Video Recorder receivers ("HR20 HD-DVRs"). The HR20 HD-DVR is a highly complex, software-based consumer electronics product that enhances the television viewer's experience by providing, among other things, the capability to receive high definition programming and to digitally record programming. The HR20 HD-DVR also allows the viewer to pause, rewind, and fast-forward programming he/she is watching.

3

7.   Since November 2006, DIRECTV has provided Mr. Szymkowicz with over $350.00 in credit amounts to compensate him for the issues he has brought to DIRECTV's attention.  On November 4, 2006, he began receiving programming credits of $10 per month for twelve months.  On November 12, 2006, he received a $5.55 programming credit.  On November 14, 2006, he began receiving additional programming credits of $10 per month for six months, and a $22.20 credit for a service call.  On November 18, 2006, he received a $36.00 service call credit. On December 30, 2006, he received a $100 retention credit.  Most recently, on January 4, 2007, he began receiving programming credits of $5 per month for six months.

8.   Mr. Szymkowicz remains a DIRECTV subscriber to this day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on *March 29, 2007*

Michael Johnson

4

**Exhibits filed in paper form pursuant to LCvR 5.4(e)(1)(B)**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| J. P. SZYMKOWICZ, | ) | |
| Plaintiff, | )<br>)<br>) | |
| vs. | )<br>) | CIVIL ACTION NUMBER: 1:07-CV-00581 |
| DIRECTV, INC., | )<br>) | The Honorable Paul L. Friedman |
| Defendant. | )<br>)<br>) | |
| | ) | |

## [PROPOSED] ORDER GRANTING DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION AND TO COMPEL ARBITRATION

This cause coming to be heard on DIRECTV's Motion to Dismiss or Stay Proceedings Pending Arbitration and to Compel Arbitration, and after consideration of the papers in support of and in opposition to Defendant's Motion, and any oral argument of counsel, the Court being fully advised and having jurisdiction,

**IT IS HEREBY ORDERED** that DIRECTV's Motion is GRANTED.

Plaintiff is ordered to bring all of the claims in the Complaint in arbitration as required in the arbitration agreement between Plaintiff and DIRECTV. Plaintiff Szymkowicz's Complaint is hereby DISMISSED with prejudice [STAYED pending the outcome of the parties' arbitration].

DATED: _____, 2007      _____
The Honorable Paul L. Friedman
United States District Court Judge